CHASE *et al.*, *Appellants*, v. WILLIAMS.

74 429
106 525
74 429
131 580
74 429
157 214
74 429
166 170

1. **Deed of Trust**: TRUSTEE DECLINING TO ACT: SALE BY SUBSTITUTE. A deed of trust provided that in the event of refusal of the trustee to ᵢc , he sheriff of the county might execute the trust. In answer to an inquiry from the holder of a defaulted note secured by this deed, the trustee said that it would be inconvenient for him to make the sale under it, as he had to attend court in another county. *Held*, that this was such a refusal to act as authorized the holder of the note to call upon the sheriff to make the sale.

2. ———— : SALE IN MASS. The mere fact that property conveyed by a deed of trust is sold in mass, is not sufficient to induce a court of equity to set aside the sale; to do so, there must also be some attendant fraud, unfair dealing or abuse by the trustee of the confidence reposed in him, or some resulting injury from a sale made in this mode. See *German Bank v. Stumpf*, 73 Mo. 311

3. ———— : SUCCESSIVE INCUMBRANCES. A junior incumbrancer, for the purpose of protecting himself, bought a note secured by the oldest incumbrance and was proceeding to have the lien of this incumbrance foreclosed, when an intermediate incumbrancer offered to buy the note from him and demanded an assignment. He refused to sell, proceeded with the foreclosure, and became the purchaser. In a suit to set the sale aside; *Held*, that the refusal to sell was no evidence of fraud on the part of defendant. He had a right to have the sale go on. If the intermediate incumbrancer had offered to pay off the note, it would probably have been different.

4. ———— : TRUSTEE'S DISCRETION TO SELL IN MASS OR IN PARCELS. In an action to set aside a trustee's sale, one of the grounds of complaint was that the land had been sold in a body when it should have been sold in parcels. The evidence showed that at the sale plaintiffs had demanded that it should be sold in parcels, but other parties in interest had insisted on a sale in a body, and the trustee had complied with their request after satisfying himself that it was best to sell in a body. It appeared also that the plaintiffs had equal opportunities to bid with the other parties, and did bid. *Held*, that the court would not interfere.

5. ———— : RATIFICATION. The trial court having decided that a suit to set aside a sale under a deed of trust for fraud should be dismissed, plaintiffs, claiming under a junior deed of trust, procured the insertion in the decree of a clause directing that the surplus proceeds of the sale should be paid to them. *Held*, that they thereby ratified the sale.

*Appeal from Randolph Circuit Court.*—HON. G. H. BURCK-HARTT, Judge.

.AFFIRMED.

*James Carr* and *H. S. Priest* for appellants.

The mere fact that it was inconvenient for the trustee to sell on the particular day or week requested, does not amount to a refusal to sell. He could have made the desired sale the next week or the next month. There must be an absolute refusal on the part of the trustee chosen by both parties, before the contingency arises which authorizes the sheriff to execute the trust. There was only authority to sell enough land to pay debt, interest and costs.; and when the sheriff sold more, he acted without authority, and the sale was null and void. *Tatum v. Holliday,* 59 Mo. 422; *Patterson v. Carneal,* 3 A. K. Marsh. 618; *Davidson v. McMurtry,* 2 J. J. Marsh. 68; *Carlile v. v. Carlile,* 7 J. J. Marsh. 624; *Stover v. Boswell,* 3 Dana 235; *Addison v. Crow,* 5 Dana 277. The appellants, as trustees for the creditors, did not want any more of the land sold than was really necessary to pay the small debt upon it—the sheriff by selling in a lump sacrificed their interest instead of adopting the course most beneficial to the debtor. 59 Mo. 428. This land was susceptible of division into parcels, and if it had been divided and sold in parcels, it would have sold for a great deal more that it did. *Chesley v. Chesley,* 49 Mo. 540; *s. c.,* 54 Mo. 347; *Benkendorf v. Vincenz,* 54 Mo. 441; *Tatum v. Holliday,* 59 Mo. 422; *Goode v. Comfort,* 39 Mo. 313; *Taylor's Heirs v. Elliott,* 32 Mo. 172; *Henry v. Mitchell,* 32 Mo. 512; *Sumrall v. Chaffin,* 48 Mo. 402.; *McLaughlin v. Scott,* 1 Binney 61. The judgment should be reversed, and the appellants allowed to redeem. *H. & St. Jo. R. R. Co. v. Brown,* 43 Mo. 294; *Parker v. R. R. Co.,* 44 Mo. 416; *Gott v. Powell,* 41 Mo. 416; *Stewart v. Croes,* 5 Gilman 442; *Day v. Graham,* 4

Mo. 389; *Groff v. Jones*, 6 Wend. 522; *Jackson v. Ludel-ing*, 21 Wall. 616.

*Charles A. Winslow* and *John R. Christian* for respond-ents.

A sale in mass, when the land is shown to be suscepti-ble of division, is not alone sufficient to avoid the sale. *Goode v. Comfort*, 39 Mo. 313; *Carter v. Abshire*, 48 Mo 300; *Sumrall v. Chaffin*, 48 Mo. 402; *Chesley v. Chesley*, 49 Mo. 540; *s. c.*, 54 Mo. 347; *Benkendorf v. Vincenz*, 52 Mo. 441. The burden of proof is on the party attacking a trustee's sale, though it seems otherwise in regard to a sheriff's sale. *Kelley v. Hurt*, 61 Mo. 469. Here the debtor has no inter-est and is not complaining; the controversy is between creditors of a common debtor; no equities peculiar to the debtor can avail the plaintiffs. *Young v. Ruth*, 55 Mo. 515. Plaintiffs did not offer to redeem the note held by Christian. When plaintiffs saw that the court was about to dismiss their bill, they voluntarily asked judgment for the surplus, to which defendants agreed, and the court changed its judgment accordingly. This was a judgment of their own asking, and they cannot now be heard on appeal from it. *Kinealy v. Macklin.* 67 Mo. 95.

NORTON, J.—This is a suit instituted in the circuit court of Randolph county for the purpose of setting aside a sale made under a deed of trust and redeeming the property. It is alleged in the petition that G. W. Morehead was, on the 6th day of April, 1870, the owner of certain real estate described in the petition, containing 290 acres; that on said day he sold and conveyed said real estate to " the North Missouri Coal & Mining Company in fee for the con-sideration of $14,500, of which $1,000 was paid cash, and for the remainder it executed thirteen promissory notes for $1,000 each, payable respectively in three, six, nine, twelve, fifteen, eighteen, twenty-one, twenty-four, twenty-seven, thirty, thirty-three, thirty-six and thirty-nine months, and

one note for $500 in forty two months, with interest from date at the rate of eight per cent per annum; and secured the payment of said notes by a deed of trust with the usual conditions on said real estate to Thomas Shackelford, as trustee; that there was a condition in said deed of trust, that if said Shackelford refused to act in said trust, then the sheriff of said county might act in the execution thereof; that on the 1st day of July, 1874, said North Missouri Coal & Mining Company executed a mortgage, among others, upon said real estate to appellants, as trustees, to secure bonds to the amount of $75,000, issued by said company; that said company paid off all the said notes to Morehead except the last note for $500 and interest thereon, of which said note defendant Christian got possession and control, claiming to have purchased it, and under the pretext that Shackelford, the trustee, refused to execute the said trust, procured defendant Williams, the sheriff of said county, to advertise said real estate for sale on the 8th day of September; that on said day the whole of said land was sold in one body for the sum of $2,175, to defendants Christian, Denny and Keebaugh, which was much less than its value; that said real estate was susceptible of division into parcels, and that one of the parcels would have been sufficient to have paid off said note, interest and costs; that the sheriff was requested by a responsible bidder to sell the land in parcels, which he declined to do, acting under the advice and influence of defendant Christian; that there was no competition at the sale; that the sheriff did not make said sale fairly and impartially, but confederated and colluded with defendant Christian so as to enable him to purchase all of said land at a comparatively nominal price; that said real estate was worth at the time of the sale $15,000. It is also averred that plaintiffs, through their agent Phillips, offered to pay said Christian said note, interest and costs on the day of sale and prior thereto, which he refused to accept; that the North Missouri Coal & Mining Company was insolvent.

Defendants Christian, Denny and Keebaugh filed separate answers, denying each and every material allegation of the petition, and alleged "that they were the owners of said real estate, having bought the same at a sale made by the sheriff of Randolph county by virtue of two executions issued by the clerk of the circuit court of Chariton county in favor of James Bailey and S. A. Flagler, and against the North Missouri Coal & Mining Company; that at the time of the sale under said deed of trust, they, being the owners of the right, title and interest of the North Missouri Coal & Mining Company, demanded that the said real estate be sold in a lump, believing that the same could be sold to a better advantage than to sell the same in any other way; that at said sale it brought its full value, and if it had been sold in any other way, all parties interested would have been injured thereby." Upon a trial of the cause the court found the issues for defendants, and rendered a decree dismissing the bill, and in the decree so rendered, on plaintiff's motion and with the consent of defendants, further decreed that the sheriff, as trustee, pay over to plaintiffs the surplus proceeds of the sale remaining after the payment of the $500 note, interest and cost of suit. From this anomalous decree and judgment plaintiffs have appealed and insist upon a reversal of the judgment on these grounds: 1st, That the sheriff had no authority to make the sale; 2nd, That if he had authority to sell, such authority was exercised by him to the damage and detriment of the debtor, in this, that the land was sacrificed by being sold in one body, when it was susceptible of division and could have been more advantageously sold in parcels; 3rd, That the sale was vitiated by fraud and collusion between defendants Christian, Denny and Keebaugh, and the sheriff making it. We will dispose of these objections in the order they are stated.

Mr. Shackelford was the trustee in the deed of trust under which the sale was made, and was authorized by the

28—74

1. DEED OF TRUST: trustee declining to act: sale by substitute. deed to sell the property in question, in the event of the non-payment of the notes and interest which the deed was given to secure. It was further provided in said deed that in the event of the absence, death, refusal to act or disability in anywise of said trustee, the acting sheriff of Randolph county might proceed to sell the property and execute the trust. The evidence shows that the grantor in said deed had paid all the notes for the securing of which the deed had been executed, except the last note for $500 and interest, that defendant Christian having become the owner of this note by purchase and assignment from the payee thereof, Morehead, in August, 1875, spoke to Mr. Shackelford, the trustee, who lived about twenty-five miles from Huntsville, where the land, under the terms of the deed, was to be sold, who said that it would be inconvenient for him to sell the land on account of his having to attend the circuit court of Saline county; that Christian thereupon applied to the sheriff of Randolph county to sell, who proceeded to advertise and sell according to the requirements of the deed. While it cannot be said from this evidence that Shackelford refused to sell at all or at some time, we think it can be safely affirmed that his answer was equivalent to saying that he refused to sell then, and would only sell at such time as might suit his own convenience. This, we think, was such a refusal to act as authorized the holder of the note to call upon the sheriff to execute the trust.

The sheriff thus having authority to sell, was it exercised by him in selling the land in a body, and not in parcels, to the detriment of the debtors? It was held in the case of *Benkendorf v. Vincenz*, 52 Mo. 441, "that the mere fact that property conveyed by deed of trust is sold in gross is not *per se* sufficient to avoid the sale. There must be some attendant fraud, unfair dealing or abuse by the trustee of the confidence reposed in him, or some resulting injury from a sale made in this way, in order to obtain the aid of a court of equity to divest title thus

2. ——: sale in mass

-acquired." As to whether the land in question would have been more advantageously sold in separate tracts than in one body, there is conflicting evidence. It appears that the tract consisted of 290 acres, 170 acres of which was inclosed for cultivation, and that it had always been sold together as one farm. It also appears that on one forty acres of the tract there was a shaft for mining coal, and that the land was valuable for mining purposes. While all the witnesses, both those for plaintiffs and those for defendants, expressed the opinion that the said forty would have sold for enough to have paid the debt, several testified that if the shaft forty had been sold by itself it would have prejudiced the sale and value of the remainder. Witness Smith, who had known the land for forty years, testified that if the said forty had been sold with the timber, the balance would not have been worth much. There was also other evidence to the same effect. Plaintiffs introduced four witnesses who testified that the land ought to have been sold in parcels, while a much larger number testified that it ought to have been sold as it was, all together. There was not only this conflict of evidence as to whether the land could have been sold to better advantage by being sold in parcels instead of in a body, but the evidence was also conflicting as to the value of the land, the witnesses for plaintiffs, four or five in number, putting its value from about $5,000 to $10,000, while the witnesses for defendant, ten or twelve in number, placed a value on it ranging from $1,800 to $3,000. The land brought at the sale $2,175, and was incumbered with about $300 of taxes. Under this state of facts we cannot say that the trial court, having before it the witnesses, erred in refusing to vacate the sale and set aside the deed because the land had been sold in a body as one farm, it further appearing that it sold for a price approximating nearly the full value put upon it by a majority of the witnesses.

Nor do we think that the evidence established fraud, collusion or combination between defendants and the sheriff

**3. ——: success-ive incumbrances** who made the sale. All of them testify to the contrary, and there is nothing in the evidence which overthrows their statements. It is true that Mr. Phillips, who was present at the sale, as he swears, as the agent of certain bondholders of the North Missouri Coal & Mining Company, testified that he requested the sheriff to sell the land in forty acre tracts, and that Christian directed him to sell it all together. Williams, the sheriff, testified that he inquired whether the land was susceptible of division and concluded it was best to sell it all together; " that when the land was put up Phillips said he wanted it sold in forty acre tracts, that he represented the bondholders. Christian said he thought it best to sell it all together. I knew that Christian had previously purchased the land under execution. There was no fraud, collusion or combination at the sale that I know of. I was in no way interested in it; there was fair competition."

It further appeared that defendants Christian, Denny and Keebaugh had previously bought the land in question at an execution sale, made under a judgment against the North Missouri Coal & Mining Company which was subject to both deeds of trust, and that Christian, to protect his interest, had bought the note of Morehead secured by the oldest deed of trust and under which the land was sold, and that on the day of the sale he refused to sell and assign said note to Phillips, the representative of other creditors secured by a deed of trust on the land in this suit and a large quantity of other land. It is insisted that fraud is made to appear by the refusal of Christian thus to sell and assign the note. If Phillips had offered to pay the debt in satisfaction of the mortgage, as the representative of plaintiffs, and Christian had refused to accept it, the subsequent sale would probably have been set aside without further inquiry, he being one of the purchasers at the sale. But the evidence does not show that this was done, and Christian had the right to decline to sell the note, and the right, as the holder of it, to have the sale go on.

The state of facts thus developed shows a contest between Phillips, as the representative of certain creditors of the North Missouri Coal & Mining Company, and the defendants Christian, Denny and Keebaugh, as the purchasers of all the interest of said mining company at execution sale under junior judgments, the said company practically having no interest in the contest, it being insolvent and its interest having been sold. Both sets were interested in the sale, one urging that it would bring more money if sold in parcels, the other that it would sell to better advantage to sell it in a body as one farm, as it had always been sold. The sheriff, in the exercise of his discretion, concluded after inquiry, as he swears, that it was best to sell it all together, and when put up each had equal opportunities of bidding upon the land, each did bid, defendants bid the most and bought the land.

*4. ———: trustee's discretion to sell in mass or in parcels.*

And plaintiffs, in the decree, which by this appeal they are seeking to overthrow, ratified the sale they are seeking to have vacated, by having the trial court, on their motion, decree and order the sheriff who made the sale to pay over to them the surplus proceeds of the sale remaining after paying the said note for $500, interest and cost of this suit. *Austin v. Loring*, 63 Mo. 19. Judgment affirmed, in which all concur.

*5. ———: ratification.*

*Motion for rehearing overruled.*