## LAZARUS, Appellant, v. CAESAR et al.

### Division Two, June 12, 1900.

1. **Sale Under Deed of Trust: SALE OF PARCELS.** Where a tract of land has been divided into parcels or lots for separate use and enjoyment, the presumption is that the property will realize more when sold in parcels at a trustee's sale than when sold in one piece, because such sale will better correspond to the probable wants of the purchasers and their ability to purchase, but this is by no means a conclusive presumption.

2. ———: ———: **SALE IN LUMP.** There is a discretion vested in the trustee to sell in the way which will produce the largest sum, and the courts will not disturb a sale of the entire land in one parcel simply because the land was not sold in separate parcels unless in addition there was fraud, unfair dealing or abuse of the discretion.

3. ———: ———: **CASE STATED.** The deed of trust covered 29 lots in a city, and through them ran a street or two. At the sale the trustee announced that he would first offer the lots separately and note the highest bids, and then offer them as a whole and note the highest bid, and if the separate bids amounted to more in the aggregate than the highest bid for the whole he would knock off the lots to their respective bidders, otherwise he would sell them to the highest bidder for all the lots in a lump. The mortgagor was present at the sale and demanded that the lots be sold separately. The separate bids aggregated $18,650, and the bid for the lots as a whole was $21,500, the highest bidder being the holder of the mortgage note. Thereupon, the trustee gave the bidders for the separate lots the opportunity to increase their bids, which was not done, and then he gave opportunity for any person to increase the bid for the whole, but there was none, and the lots were sold to the bidder for the entire tract as one parcel. *Held*, that this sale, there being no evidence of fraud, unfairness, or abuse of the trustee's discretion, could not be set aside at the prayer of the bidders for the separate lots, but the trustee is rather to be commended.

Lazarus v. Caesar.

4. ———: ———: PURCHASER OF EQUITY OF REDEMPTION AS BIDDER. In this case the bidder for the lots when they were offered in separate parcels, was the purchaser at a previous sale under a second mortgage. He had in no wise assumed the payment of the mortgage note, which was held by the bidder for the whole tract, who credited the amount of his bid on the note, when the trustee made the deed to him. *Held*, that the bidder for the separate lots was in no position to complain that the property sold for less than its worth and that the original mortgagor must pay the balance of the debt, nor was he in a position to ask that the sale be set aside and the property be resold because the holder of the note was at the sale willing to bid the entire amount thereof rather than lose the lots. *Held*, also that his complaint that the amount for which the property was sold was less than the mortgage debt, was inconsistent with the prayer in the first count of his petition that the title be vested in him, since the aggregate of his bids for the separate lots was $2,850 less than the amount bid for the whole tract by the successful bidder.

Appeal from Jackson Circuit Court.—*Hon. E. L. Scarritt,*
Judge.

AFFIRMED.

*Harwood & Meredith* for appellant

(1) When the mortgaged premises consist of distinct tracts or separate parcels of ground, it is the uniform rule that they must be sold in separate parcels. 9 Encyc. Pl. and Pr.. 513; Freeman on Ex. Sales, sec. 295; Wiltsie on Mort. Foreclosures, 591, sec. 488; Sumrall v. Chaffin, 48 Mo. 402; Chesley v. Chesley, 49 Mo. 541; Tatum v. Holliday, 59 Mo. 422; Kelly v. Hurt, 61 Mo. 463; Gray v. Shaw, 14 Mo. 341; White v. Watts, 18 Ia. 74. (2) The sale should have been made according to the separate tracts or parcels as described in the deed of trust. 9 Encyc. Pl. and Pr., 514; Wolcott v. Schenck, 23 How. Pr. 385; Cunningham v. Cassady, 17 N. Y. 276; Durm v. Fisher, 46 Mich. 312. (3) The property should have been sold in parcels in accordance with the directions of the owner of the mort-

gaged premises. 9 Encyc. Pl. and Pr., 515; Chesley v. Chesley, 49 Mo. 541; King v. Platt, 37 N. Y. 155. (4) The trustee is the agent and trustee of the owner of the land, and . when he becomes a mere figure-head in the hands of the creditor and fails in any respect in his duty toward the owner, the sale will be set aside. Vail v. Jacobs, 62 Mo. 130; Stoffel v. Schroeder, 62 Mo. 142; Cassidy v. Wallace, 102 Mo. 575; O'Donnell v. Lindsay, 39 N. Y. 523. (5) Property worth nearly $50,000 having been bid in by the creditor for less than half of its value this inadequacy of price, taken with the unfair method of sale, is sufficient to justify the court in setting the sale aside. Holzworth v. Shannon, 113 Mo. 508; Stoffel v. Schroeder, 62 Mo. 142. (6) The statute law of Missouri and many other States requires the sheriff in making judicial sales to sell in parcels; this statute in many states governs sales in foreclosures and has been held to be merely a legislative direction of a duty older than the statute. R. S. 1889, sec. 4929; Kelly v. Hurt, 61 Mo. 469; Wiltsie on Mort. Foreclosures, sec. 488; Cunningham v. Cassady, 17 N. Y. 276; Piel v. Brayer, 30 Ind. 339; Magruder v. Leggston, 40 Wis. 284. (7) It was the duty of the trustee to have knocked down and sold the property to the highest bidders on the several parcels and plaintiff is entitled to a deed, for the lots upon which he made the highest bids. Brake v. Brownlee, 91 Ind. 359.

*Scarritt, Griffilh & Jones* for respondents.

(1) If it is not the law that a trustee must in every instance sell property described in a deed of trust in separate parcels rather than *en masse* then appellant has stated absolutely no cause for action in his first count. That this is not the law has been settled beyond peradventure by the decisions in this State. Benkendorf v. Vincenz, 52 Mo. 441; Bank v. Stumpf, 73 Mo. 311; Chase v. Williams, 74 Mo.

429; Carter v. Abshire, 48 Mo. 300; Tatum v. Holliday, 59 Mo. 422; 26 Am. and Eng. Ency. of Law (1 Ed.), p. 948. (2) In the first count of the petition in the case at bar plaintiff does not aver that there was any fraud, unfair dealings or abuse of discretion on the part of the trustee, nor that the property would have brought more if sold in parcels, but as a matter of fact alleges that the property was offered both ways, and that the bid for the whole exceeded the aggregate bids for the separate lots $2,850. Under the law, as declared by the above decisions, there is absolutely no ground for equitable interference set out in the first count. (3) The maker of the note is not in court asking that the sale be set aside for the reason that there was a deficiency left on his note after the sale, nor does it appear that he has authorized plaintiff to become so solicitous on his behalf, nor does plaintiff's prayer for the relief of the "poor debtor" appear to be in good faith when taken in connection with the prayer of the first count of his bill wherein he prays the court to order the trustee to sell the whole property to him and Mrs. Harwood for $2,850 less than the sum at which it was knocked down to Caesar. (4) There is no strict rule laid down by statute, or by the decisions of the courts, that should guide a trustee in every case, but the trustee must in each case use his judgment and discretion and exercise his power in perfect fairness to all, and especially must sell in the manner that, in his best judgment, will make the property bring the most and will leave the least deficiency to be met by the debtor. Benkendorf v. Vincenz, 52 Mo. 441; Bank v. Stumpf, 73 Mo. 311; Chase v. Williams, 74 Mo. 429; Carter v. Abshire, 48 Mo. 300; Tatum v. Holliday, 59 Mo. 422; Keiser v. Gammon, 95 Mo. 217; Sumrall v. Chaffin, 48 Mo. 402; Chesley v. Chesley, 49 Mo. 541; Hardwicke v. Hamilton, 121 Mo. 465. Counsel for appellant cite a number of cases from other jurisdic-

tions.   It will be found upon examination of these authorities that the decisions arrived at therein are based upon statutory provisions of the respective states.   (5)   Counsel for appellant lay some stress upon the fact that the law of this State requires the sheriff in making judicial sales to sell in parcels.   (R. S. 1899, sec. 3185).   This section of the statute has, however, been often held to be merely directory. Sheehan v. Stackhouse, 10 Mo. App. 469.

GANTT, P. J.—This is an appeal from the circuit court of Jackson county.   The action was commenced on May 15, 1896.   The petition contains two counts.   In the first count plaintiff prays the court to set aside a certain trustee's sale made by defendant Vaughan as trustee to defendant Caesar and to order the trustee to make a deed to plaintiff for a certain part of the real estate covered by the trustee's deed, and in the second count he prays to have the trustee's deed to Caesar set aside and a re-sale of the property ordered.

The petition in substance alleges that plaintiff on February 21, 1896, was the owner of lot A and lots 1 to 7, both inclusive, and lots 10 to 29, both inclusive of Talbott Place, an addition to Kansas City, Missouri, by virtue of a purchase at a trustee's sale under a second mortgage on said property to the Phillips Investment Company, dated June 26, 1893,. and afterwards conveyed by said company to plaintiff by quitclaim deed on April 29, 1896.   That at the time he acquired said title there was then a prior deed of trust thereon of date July 1, 1889, given by Leander J. Talbott and wife to Samuel Jarvis as trustee to secure a note for $38,000 given by said Talbott to Jarvis-Conklin Mortgage Trust Company.   That said note had been assigned to and was owned by W. J. Caesar; that on January 17, 1896, Samuel M. Jarvis appointed in writing E. G. Vaughan as trustee to

act in his place and stead; that on account of the default in said note said E. G. Vaughan advertised the property, including that owned by plaintiff, for sale on February 21, 1896; that at said sale said trustee inquired how those present desired the property sold, whether in parcels or altogether in one parcel; that thereupon plaintiff requested it be sold in parcels, each lot separately; that thereupon said trustee announced that he would offer the lots separately and receive any bids made on separate lots but would not knock down and sell said lots separately but would after receiving the bids on the several lots separately, offer all of said real estate as a whole and that if he received a higher offer for said real estate as a whole than the aggregate of the several bids on the lots separately he would accept the bid on the real estate as a whole; that the plaintiff, the Phillips Investment Company and Charlotte G. Harwood thereupon protested against such a method of sale, and said that they would insist on their bids on the lots separately being accepted and the property knocked down to the highest bidder. Said Vaughan then proceeded with the sale, offering the lots separately:    On each of the said lots plaintiff and said Charlotte G. Harwood made *bona fide* bids; they were the only bidders, neither said Blakely nor said Moore nor any one else bidding; that for the following lots in Talbott Place offered for sale by said trustee, plaintiff was the highest, last and best bidder at the following prices: lot A at $10,000; lot I, at $500; lots 6, 7, 10 to 25, inclusive, at $300 each; lots 26, 27, 28 and 29, at $400 each.    That for the following lots in said Talbott Place said Charlotte G. Harwood, was the highest, best and last bidder at the following prices: lots 2, 3 and 5, at $300 each, and lot 4 at $250.    That at the end of the bidding on each of the lots on which plaintiff was the highest, best and last bidder, and before another lot was offered for sale, plaintiff demanded that the trustee knock

down the lot to him and announce plaintiff as the purchaser thereof, and offered to make any payment thereon required by the trustee, and a like demand and offer was made by Charlotte G. Harwood as to lots on which she was the highest, best and last bidder, but said trustee refused to knock the lots down as sold, but announced that he would hold such bids in reserve until he had offered the real estate as a whole. That after the lots had been offered separately and had been purchased as aforesaid by plaintiff and Charlotte G. Harwood, plaintiff, and said Charlotte G. Harwood, tendered to said trustee on account of these said bids the sum of $1,000, and offered to pay said trustee their bids in full, but said trustee announced that it was useless to make any tender, as he would not accept any money on the bids, but proposed to offer the real estate as a whole. Plaintiff and Phillips Investment Company and said Charlotte G. Harwood thereupon protested against the action of said trustee, and against said lots being again offered for sale, but said trustee over such protests and objections proceeded to offer the real estate as a whole. That on the real estate as a whole the said Caesar was the only *bona fide* bidder, and the same, over the objection of plaintiff and said Harwood, was knocked down to him by said trustee at the sum of $21,500, and said trustee in pursuance of said pretended sale to said Caesar did on February 24, 1896, execute and deliver a trustee's deed, conveying to said Caesar all said real estate, which deed was on February.25, 1896, filed for record in the office of the recorder of deeds for Jackson county, Missouri, at Kansas City, and is recorded in book B 611, at page 584. Plaintiff alleges that said real estate is located in the best residence portion of Kansas City, and each of said lots is large enough for building purposes, and said lots, prior to the giving of said deed of trust to Jarvis, trustee, were platted for the purpose of separate sale, and

the streets running through said real estate were dedicated to the public use, and have ever since been used by the public; that the natural division of said real estate is in lots as divided and platted. The plaintiff further alleges that the defendant, W. J. Caesar, is now in possession of said real estate under the trustee's deed described above; that the plaintiff has been ever ready, willing and able to pay in cash the amount bid by him at said sale for said real estate, namely, the sum of $17,500, which amount the plaintiff now offers to pay. Plaintiff alleges that by reason of the premises he was entitled to have the said lots on which he was the highest bidder knocked down and sold to him by said trustee, and to receive a deed from said trustee therefor; that by reason of the premises the said pretended sale to Caesar and the said trustee's deed made in pursuance thereof are void and of no effect, and should be by this court set aside. That the plaintiff has no adequate remedy at law, and that he will receive irreparable injury unless the remedy herein prayed for is granted. Wherefore, the plaintiff prays that said pretended sale of said real estate to said Caesar and the said trustee's deed by E. G. Vaughan, as trustee, to W. J. Caesar above referred to, be set aside and declared null and void, and that the trustee, E. G. Vaughan, be required to execute and deliver to the plaintiff herein a trustee's deed in proper form, conveying to plaintiff said lots A and I, 6 and 7, and lots 10 to 29 both inclusive, of Talbott Place, on a payment by plaintiff to said trustee of the sum of $17,500, being the amount bid for said lots by the plaintiff at said sale, and for such other and further relief as to the court may seem proper.

The second count of plaintiff's petition was identical with the first count down to the prayer, with the following superadded:

"Plaintiff further alleges that plaintiff and said Char-

lotte G. Harwood were not prepared ·to bid on said real estate as a whole, but they were prepared to bid on each and every parcel thereof, and that with competitive bidding on the parcels on the part of said Caesar, plaintiff and said Harwood, each of said lots would have sold for a fair price, and all the lots for much more in the aggregate than the $21,500 for which said real estate as a whole was knocked down to said Caesar.   That said Vaughan and said Blakely, the agent of said Caesar, well knew that if the said real estate should be sold in separate lots, and said Caesar compelled to bid on the separate lots, the said plaintiff and Harwood would have bid upon each lot and that in order to buy every lot said Caesar would have had to pay a fair price therefor, and that his whole debt might have been paid without the sale of all said real estate; and said Vaughan as trustee and Blakely as agent of said Caesar improperly and unlawfully and for fraudulent purpose of preventing bidding and in order to enable said Caesar to. buy all the said real estate and to leave as large a deficiency as possible on said $38,000 note, did arrange said method of sale, and did conduct said sale as hereinbefore set out, all to the manifest injury of the plaintiff, who was the owner of the equity of redemption in said real estate, and was entitled to have said real estate sold in any lawful manner that he might elect.   Plaintiff alleges that he has no adequate remedy at law and that he will receive irreparable injury, unless the remedy herein prayed for is granted.   Wherefore, plaintiff prays that said pretended sale to said Caesar of said real estate by said Vaughan, as trustee, and the said deed made in pursuance thereof be set aside and declared null and void and that said Vaughan, trustee, be instructed, when again called on by the holder of said $38,000 note to sell said real estate, to sell the same in parcels and by lots as designated

on the recorded plat of said Talbott Place, and for such other and further relief as to the court may seem proper."

The answer of defendants, Caesar and Vaughan, omitting caption, was as follows:

"The defendants, W. J. Caesar and E. G. Vaughan, trustee, for answer to the first cause of action in plaintiff's petition (this being an amended answer so far as concerns said Vaughan) deny each and every allegation in said first cause of action mentioned except such as may be hereafter admitted.

"Second.    And further answering they admit that the defendant Caesar, bought the property described in said first cause of action and paid therefor the sum of twenty-one thousand five hundred dollars at a sale made by the defendant, E. G. Vaughan, trustee, under the provisions of the deed of trust described in said cause of action; they state that said property in said cause of action described was offered for sale by said Vaughan as trustee, upon the following terms; that is to say, before beginning said sale said trustee openly announced that he would offer the several lots described in said cause separately, and the bids thereon would be noted, but the property would not be knocked down or sold except as hereinafter mentioned; that he would offer said property as a whole, and note the bid thereon, but not knock the same down; that he would then give the bidders for sale said lots separately an opportunity to increase their several bids; and that he would then give the bidder or bidders for said property, as a whole, an opportunity to increase their bids if they so desired, and that he would strike off the property to the bidders for separate lots if the aggregate of their bids equaled or exceeded the bid for the said lots as a whole.    That at said sale, so made under said deed of trust and under said announcement, the plaintiff, Sam Lazarus, and one Charlotte G. Harwood, bid the amounts for

the lots as alleged in said cause of action, which bids aggregated the sum of eighteen thousand six hundred and fifty dollars; that said Blakely in behalf of said Caesar bid the sum of twenty-one thousand five hundred dollars for said property as a whole; that thereupon said trustee called upon said Lazarus and Harwood, or any other who might be present to increase their bids or make new bids upon said lots separately if they so desired; that said Lazarus and Harwood refused to bid further on said property and there being no other bid on said lots the bid of said Blakely in behalf of the defendant Caesar, for said lots as a whole was accepted and the property stricken off and sold to said Caesar, as above stated, for the sum of twenty-one thousand five hundred dollars. These defendants state that there were no other bidders at said sale excepting those mentioned and one John A. Moore who announced that he would bid on said property only as a whole and not as separate lots. And these defendants answering further say that said property was sold openly and fairly and by the mode adopted obtained a better price for the same than was offered by said bidders for separate lots, and they ask judgment for cost herein.

"Third. And for a defense to the second cause of action in plaintiff's petition set forth, these defendants say that they deny each and every allegation therein contained not hereinafter admitted.

"Fourth. And further answering said second cause of action these defendants state that they admit that the defendant Caesar bought the property described in said cause of action and paid therefor the sum of $21,500 at a sale made by the defendant, E. G. Vaughan, as trustee, under the provision of the deed of trust described in said cause of action, and they state that said property was offered for sale

by said trustee in the following manner: that is to say, before commencing to cry said sale, the said trustee announced that he would offer said lots separately and note the bids thereon, but would not strike off nor sell said lots except upon the terms hereinafter mentioned; that he would then offer said property for sale as a whole and note the bids therefor in that manner; that he would then give to the bidders for separate lots an opportunity to increase their bids if they so desired or allow any one to further bid on said lots separately; that he would then give the bidders for said lots as a whole an opportunity to increase their bids if they so desired, and that he would knock off and sell said property to the bidders for separate lots if the aggregate of their bids equaled or exceeded the bid for said lots as a whole; otherwise he would knock off and sell said lots to the highest bidder therefor as a whole; that said announcement was fully understood by all present; that there were no bidders at said sale except the said Lazarus and Charlotte G. Harwood by her agent John T. Harwood, and John A. Moore and the said Blakely, agent for said Caesar as aforesaid; that at said sale so made and under said announcement the said Lazarus and Charlotte G. Harwood bid the amounts for the lots as alleged by the plaintiff in his second cause of action, which bids aggregate the sum of $18,650; that said Blakely the agent of said Caesar and in behalf of said Caesar bid for said lots as a whole the sum of $21,500; the said trustee thereupon called upon and notified said Lazarus and Harwood and any other who might desire to bid for said lots separately to increase their bids upon the same if they so wished; that the said Lazarus and said Harwood refused to bid further for said property or make any other bid than those mentioned in said cause of action, and there being no further bids for said lots separately, the said lots as a whole were stricken off and sold to the defendant Caesar at the

price and sum of $21,500, it being the highest bid for said property.    These defendants say that said property was sold fairly and by the mode adopted as aforesaid brought nearly three thousand dollars more than it would have brought by the mode insisted upon by the plaintiff in this action.    They further deny that the trustee had made any combination with the said Blakely as agent for Caesar or the said Moore or any one else in relation to the sale of said property. They further say that the method adopted by the trustee in this cause of action is a common mode of sale of property at public sales in Kansas City.    They further say that said Caesar has paid said sum so bid by him, and that they executed and delivered to him a deed for the property which is of record in the office of the recorder of deeds of Jackson county, Missouri, in the book and page as mentioned in plaintiff's petition and having fully answered they ask to be discharged with costs."

The reply of plaintiff, omitting caption, was as follows:

"Now comes the plaintiff, Samuel Lazarus, and for his reply to the answer of the defendants, denies that the property mentioned in said answer was sold fairly or that it brought a better price than it would have brought if offered in separate lots; plaintiff denies that the method of sale adopted by the trustee in this cause is a common mode of sale of property at public sales in Kansas City; plaintiff denies that said Caesar has paid the sum bid by him in any other way than by a credit upon the note secured by the deed of trust under which the sale was made; plaintiff admits the other allegations of new matter contained in said answer."

The evidence tended to prove the allegations in the first count of the petition.    Indeed they are practically admitted and the question arises whether or not under the facts and circumstances the trustee's sale to Caesar should be set aside and he should be required to convey to Lazarus the several

parcels for which he was a bidder. Plaintiff appears before the court not as a mortgagor seeking to redeem his land because his debt was not paid by the foreclosure, but as a bidder demanding a conveyance on the sole ground that it was the duty of the trustee to sell the real estate in subdivisions or parcels and not in a lump, regardless of the fact that a larger sum was bid for the land as a whole than the aggregate of the several bids for the parcels amounted to, and notwithstanding that he fully advised the bidders before the sale commenced that he would offer it in both ways and sell it in the manner that would bring the most money.

As to this first count there is no charge of fraud or collusion and no evidence to sustain such a charge had it been made. In a word, the contention of plaintiff is that it was the unqualified duty of the trustee to sell the property in separate parcels and not in a lump, although by the latter course the property did bring a larger sum to apply on the mortgage debt. While it may be conceded that where a tract of land has been divided into parcels or lots for separate and distinct enjoyment, the presumption is that the property will realize more when sold in parcels than in one piece, because such a sale will better correspond to the probable wants of the purchasers and their ability to purchase, but this is by no means a conclusive presumption.

On the contrary the books abound with cases which hold that a discretion is vested in the trustee to sell in the way which will produce the largest sum, and this court has often refused to disturb a sale *en masse* simply because the land was not sold in parcels, but has required in addition, evidence of fraud, unfair dealing, or abuse of confidence. Thus in Carter v. Abshire, 48 Mo. loc. cit. 302, this court said: "A trustee, in exercising his duties and powers under a trust deed, is a trustee for the debtor, and is bound to act in good faith and adopt all reasonable modes of proceeding

in order to render the sale the most beneficial to the debtor. Therefore, where property will bring more by being separated when sold, it is the duty of the trustee to pursue that course, whether the deed contains a direction to that effect or not......But no general rule can be laid down for the government of trustees on this subject. In some cases the sale of an entire tract will be more judicious and better subserve the interest of the debtor than a division in parcels. A farm or a piece of real estate may derive additional value from its unity or entirety. In all such cases the trustee must act in a manner most beneficial to the debtor." In that case the property was sold in a mass and the sale was upheld.

There is nothing contrary to this in Sumrall v. Chaffin, 48 Mo. 402.

In Benkendorf v. Vincenz, 52 Mo. loc. cit. 444, the court says: "The mere fact that the property conveyed by deed of trust is sold in gross is not *per se* sufficient to avoid the sale; and no case that I am aware of has gone to that length. There must be some attendant fraud, unfair dealing, or abuse by the trustee of the confidence reposed in him; or some resulting injury from a sale made in this way, in order to obtain the aid of a court of equity to divest a title thus acquired. In the very nature of things some latitude of discretion ought in this regard to be allowed the trustee; indeed, the very instrument conferring the power contemplates this, and so long as his acts are free from any suspicion of bias, and that discretion is not arbitrarily nor unsoundly exercised, those acts will be exempt from equitable interference."

In Tatum v. Holliday, 59 Mo. loc. cit. 428, WAGNER, J., for the court, says: "There are instances in which the whole of a piece of property will sell for more than it would by being separated, and in all such cases the trustee must exercise a sound discretion."

To the same effect are German Bank v. Stumpf, 73 Mo. 311, and Chase v. Williams, 74 Mo. 429, and numerous other cases.

Our conclusion is that there is no evidence of fraud or unfair dealing on the part of the trustee and no ground for equitable interference shown by plaintiff on the first count in his petition.

The second count is in all respects like the first, save that there is superadded a charge of collusion between the agent of defendant Caesar and the trustee to prevent a sale in parcels in order to enable Caesar to buy all of said real estate and leave as large a deficit as possible on the Talbott note. As already remarked, Talbott, the maker of the note, is not before the court seeking to have the sale set aside, because his land was sacrificed, and in view of the other allegations of the petition wherein plaintiff complains that the trustee did not accept a bid for $18,650 instead of the bid for $21,500, this solicitude for Talbott strikes us as inconsistent with plaintiff's first count. It is difficult to discern how plaintiff was injured because Caesar was not compelled to pay more for the property.

It is not alleged what the true value of the property was, nor the amount of the debts against it, nor that any injury resulted to plaintiff because Caesar was not compelled to bid more for the property. Granting that the property might have been sold in such a way as to have paid all of Caesar's debt of $45,000 and the taxes, still it is not apparent how plaintiff would have been benefited or why a failure to realize the amount of the debt entitles plaintiff who is not a party to the note to have it resold.

It is true plaintiff avers that the debt "might have been paid by the sale in parcels," but when this averment is considered with the other allegations that the property was actually offered in parcels and as a whole and the bid for the

whole exceeded those for the parcels by $2,850, it seems to us the plaintiff disposes of his own contention.

Plaintiff offered a statement of what he would have sworn to at the trial; that he would have bid as much as $37,600 and that the property was worth $40,000. His evidence also showed that Caesar's agent was authorized to bid $45,000 for the land. If plaintiff was only able to bid $37,600 for the property it is clear he was not able to bid its real value and if Caesar was willing to bid $45,000 for it, he certainly would have gotten it, but if Caesar had bid the full amount of his note and the taxes ($48,000) how would plaintiff have been benefited?

It is plain, we think, that in this second count plaintiff is seeking to constitute himself a trustee for Talbott who has not sought his aid, and that in this proceeding Talbott's wrongs, if any, can not be righted. After a careful review of all the evidence we discover no taint of collusion or bad faith on the part of the trustee. He appears to have acted throughout with the utmost fairness and a desire to make the property bring its full value at the sale.

He pursued a course that left nothing to conjecture. He tested both plans and the result was that the property brought more in the lump than by parcels. It was his obvious duty to the debtor to accept the highest bid and his course is rather to be commended than condemned.

The judgment is affirmed. *Sherwood* and *Burgess, JJ.*, concur.