CAPE GIRARDEAU & THEBES BRIDGE TERMINAL RAILROAD COMPANY, Appellant, v. SOUTHERN ILLINOIS & MISSOURI BRIDGE COMPANY.

In Banc, December 23, 1908.

1. SECOND APEAL: Law of Case. When the law of a case is declared on appeal it becomes the law of the case on a second trial, especially where in the former appeal the judgment was reversed with specific directions.

2. CONDEMNATION: Former Adjudication: Property Rights: Stare Decisis. Where this court on former appeal adjudged that defendant was entitled to condemnation in a certain strip of land to be used in connection with its bridge, and that adjudication was followed by the trial court, and defendant paid the damages awarded and took possession of the land and

constructed its approaches and plaintiff has taken down the money paid into court for its use, the questions reviewed and determined by the former adjudication will not be reviewed or reopened in plaintiff's suit in ejectment against the same company for the same tract of land or any large part of it. Property rights of great value having been acquired as a result of that adjudication, it became a rule of property, and is not to be disturbed.

3. ————: **Acceptance of Damages Awarded.** Where plaintiff accepted and took down the damages which had been awarded it by the judgment of the circuit court, after the affirmance of that judgment by this and the U. S. Supreme Court, it foreclosed forever its right by ejectment or otherwise to claim the land that had been awarded to defendant by that judgment.

4. ————: ————: **After Appeal: Shown In Appellate Court.** Where the plaintiff after its appeal from the judgment in its suit in ejectment sought and obtained an order from the trial court directing the clerk to pay to it the money which had been awarded as damages in the prior condemnation case to the owners of the same land sued for in this ejectment, it is estopped from further claiming said land; and the fact that plaintiff did accept and take down the award, after appeal, though the record does not show that fact, and in the nature of things could not do so, may be shown in the appellate court, and if satisfactorily shown, or openly admitted in oral argument, the same rule of estoppel and satisfaction will be applied.

Appeal from Scott Circuit Court.—*Hon. H. C. Riley,* Judge.

AFFIRMED.

*Giboney Houck, John A. Hope* and *M. R. Smith* for appellant.

(1) Plaintiff's purchase of the land in controversy was not *pendente lite.* It purchased and recorded its deed on April 24, 1902, and summons in the Stone condemnation case was not served on Mrs. Finley until April 28th, nor on Mr. Stone until April 29, 1902. Hence, when defendant purchased, the court had no jurisdiction over its grantors, and the condemna-

tion suit was not *lis pendens*. Not only that, but, as has been shown, the court was without jurisdiction over the subject-matter of that suit. These two conditions, each of which was strictly necessary in order to make defendant a purchaser *pendente lite,* viz.: jurisdiction over the person, and jurisdiction over the subject-matter, did not exist. 21 Am. and Eng. Ency. Law (2 Ed.), 607; Herrington v. Herrington, 27 Mo. 560. (2) It is unnecessary to consider what effect actual notice of the filing of defendant's petition to condemn, as distinguished from the constructive notice arising from a *lis pendens,* would have had on defendant's title, because as a matter of fact the deeds from Stone and Finley to Messrs. Crowder et al., and from Messrs. Crowder et al. to defendant were executed and delivered, and the purchase price paid, prior to 10:30 a. m., April 24, 1902, when the circuit clerk filed defendant's petition against Stone and Finley to condemn. Therefore, they could not possibly have had actual notice of the pendency of the condemnation, at or prior to the purchase, and there is no theory under which it can be truthfully said that defendant purchased *pendente lite.* (3)    *Res adjudicata* will not avail as a defense unless the court had jurisdiction of both the subject-matter and the parties in the former case. Even if defendant had the right to condemn, its petition in the Stone case does not state facts sufficient to confer jurisdiction; hence, the trial court had no jurisdiction, and this court could have none on appeal. But if defendant had no power to condemn, as we have shown, jurisdiction could not be conferred by any petition it might file. The proceedings in the Stone case are void *ab initio,* and constitute no defense to this ejectment suit. 9 Am. and Eng. Ency. Law (2 Ed.), 626; Ellis v. Railroad, 51 Mo. 203. (4) "It is an elementary principle that an erroneous decision is not bad law, it is no law at all. It may be final upon the parties then before the court, but it does not

conclude other parties having rights depending upon the same questions.'' Wells on *Stare Decisis,* p. 536. (5) The rule of *stare decisis* is not inflexible, although prior decisions are not lightly to be departed from, yet any error may be corrected when no substantial injury is to be expected from the change, or when the evils of adherence are manifestly greater than those of departure. Wells on *Res Adjudicata* and *Stare Decisis,* secs. 624, 625, 626 and 627; 1 Kent Com., secs. 476-477. (6) Happily, in this ejectment suit, no private rights can be injuriously affected by overruling the two majority decisions of this court in the case of Bridge Company against Stone. If the Bridge Company in building its railroad, yards and terminals on plaintiff's land, acted in good faith and without notice of plaintiff's title to the land, and is ejected therefrom, the ejectment law provides a mode by which it can assert its claim for such improvements as it has put on the land, and the courts will be open to it for that purpose—an issue which the Cape Girardeau Terminal Railroad Company is prepared to meet.

*W. H. Miller* for respondent; *Alex. G. Cochran* of counsel.

(1)    If it be possible by adjudication of courts of competent and final jurisdiction to determine the rights of a property-owner or of an investor, it has been done in this instance. Respondent contends that all of the objections and points of law raised and labored by appellant in this case were forever and finally settled against him, in so far as this property is concerned, in the case of Southern Illinois & Missouri Bridge Company v. Stone, 174 Mo. 1. Following that, however, was a reaffirmation of the same doctrine and of the law as therein announced, in which all the points were involved and were re-hashed and re-tried in the case of Southern

Illinois & Missouri Bridge Company v. Stone, 194 Mo. 175. So that to argue and brief the merits of the case is superfluous, and would almost amount to a contempt of court. Moore v. Albany, 96 N. Y. 410; N. W. Forwarding Co. v. Mahaffey, 36 Kan. 157; Reed v. Ownby, 44 Mo. 206; Dunklin Co. v. Chouteau, 120 Mo. 593; Wilson v. Beckwith, 140 Mo. 301; State v. Thayer, 158 Mo. 58; City of Sedalia v. Gold, 91 Mo. App. 38; Sappington v. Oeschli, 49 Mo. 244; Bank v. Douglas County, 146 Mo. 152; Potter v. McDowell, 43 Mo. 93. (2) It will not be overlooked that this is the second appeal in this case and that every legal proposition, in so far as it involves the right of this respondent to acquire by exercise of eminent domain the property in controversy, has been passed upon and this respondent entered into the possession of the property and expended a sum aggregating more than $3,000,000, under the specific direction of the court. So. Ill. & Mo. Bridge Co. v. Stone, 174 Mo. 1. Respondent asserts now that in the absence even of a specific direction the law as laid down by the majority opinion in the case supra is the law that will govern this court in passing upon this appeal. Poulsen v. Portland, 21 L. R. A. 677; Ashley v. Portland Road Co., 111 Mo. App. 86; Corey v. West, 165 Mo. 452; Lawson v. Spencer, 90 Mo. App. 514; Overall v. Ellis, 38 Mo. 209; Bank v. Taylor, 62 Mo. 338; Kieth v. Kieth, 97 Mo. 225; Chapman v. Railroad, 146 Mo. 481; Fink v. Ins. Co., 66 Mo. App. 531; Dillon v. Railroad, 71 Mo. App. 631; State ex rel. v. Edwards, 144 Mo. 647; Tourville v. Railroad, 148 Mo. App. 623; Riley v. Sherwood, 155 Mo. 37. (3) Appellant says there is no *lis pendens* in this case and that plaintiff's purchase of the land in controversy was not *pendente lite,* and undertakes to cite authority. A wonderful proposition in view of the testimony of the counsel and of the law of eminent domain as promulgated in the Missouri statute, as well as of the declaration of this court in

its original opinion found in the 174 Mo., page 1, et seq., in which opinion this statute is quoted and it is there declared that this plaintiff, if it acquired any title at all, acquired it subject to the condemnation proceedings; that the statute required the record owners of the property to be made parties defendant only, and that had been done.

GANTT, C. J.—This is an action in ejectment by the plaintiff against the defendant for the possession of seventeen acres, more or less, of land in the northwest corner of Scott county, being the same land that was condemned in a proceeding commenced by the Southern Illinois and Missouri Bridge Company on the 24th of April, 1902, in the circuit court of Scott county, Missouri, for the appropriation of a strip of land containing 20.3 acres, approximately four thousand feet long and two hundred feet wide, for its approach to its bridge over the Mississippi river from a point in Alexander county, Illinois, to a point opposite thereto in Scott county, Missouri, and known as the Thebes bridge, and for a right of way for its railway tracks and terminal yards, in said Scott county. When that proceeding was begun the circuit court of Dunklin county, to which the proceeding had been sent on change of venue, held that the defendant herein, the plaintiff in that proceeding, had no right to condemn said strip of land for the purposes aforesaid. From that judgment the defendant herein, the plaintiff therein, appealed to this court and this court reversed the judgment of the circuit court of Dunklin county and remanded the cause, with specific directions to the circuit court to appoint three commissioners to assess the damages which the defendants therein, Stone, Finley and others, would sustain by the appropriation of said strip of ground. The decision of this court on that appeal is reported in Southern Illinois & Missouri Bridge Company v. Stone, 174 Mo. 1. Thereup-

on the circuit court appointed said three commissioners and they duly qualified and assessed the said damages at eight thousand, one hundred and twenty dollars, and thereupon said Bridge Company deposited said sum with the clerk of the circuit court of said county, and thereupon the said defendants duly filed their exceptions to said report and demanded a jury to assess their damages, which motion was sustained, and in due order a jury was impaneled and assessed said damages at ten thousand dollars, and thereupon said Bridge Company, defendant herein, deposited the further sum of eighteen hundred and eighty dollars in court with the clerk thereof and the circuit court rendered its judgment appropriating said strip to the use of the Bridge Company and rendered judgment for the defendants therein, Stone and others, for ten thousand dollars. From that judgment Stone and others appealed to this court and said judgment was in all things affirmed by this court February 26, 1906. [So. Ill. & Mo. Bridge Co. v. Stone, 194 Mo. 175.]

Thereupon said Stone and others, the defendants therein, appealed from the judgment of this court to the Supreme Court of the United States, which court on May 13th, 1907, affirmed the judgment of this court (Stone v. Southern Ill. & Mo. Bridge Co., 206 U. S. 267), and thereafter, as admitted by counsel for plaintiff herein in open court in the argument of this cause, the plaintiff herein, which had been duly substituted by the judgment of the circuit court of Dunklin county to the rights of said Stone and others, to have and receive said ten thousand dollars as the grantees of said Stone and Finley, took and received from the clerk of the circuit court of Dunklin county the said ten thousand dollars in satisfaction of said judgment for and as compensation for said strip. In the meantime the defendant herein, the plaintiff in said condemnation proceeding, after depositing said ten thousand dollars with the clerk of the circuit court, proceeded to and

did take possession of said strip of land and built and constructed its piers, approaches and tracks to connect its said bridge with the Scott county terminus of said bridge and graded and laid its terminal tracks on said strip and has ever since and is now occupying and asserting its right to the possession thereof under and by virtue of its said condemnation proceedings and the judgments of this court and the circuit court of Dunklin county and the Supreme Court of the United States, all of which facts fully appear in the record of this court and the Supreme Court of the United States, hereinbefore cited. In the meantime also, the plaintiff herein on May 11, 1903, commenced this action of ejectment in the Scott Circuit Court for said strip of land or at least seventeen acres of said 20.3 acres appropriated in said condemnation proceedings, and upon trial had in said circuit court on the 19th day of October, 1904, judgment was rendered for the defendant herein, and an appeal granted to plaintiff.

There is and can be no dispute as to the controlling facts in this case, as they are all matters of record save and except the receipt by the plaintiff of the ten thousand dollars damages assessed by the jury as compensation for the appropriation of the strip of land in suit, and as the plaintiff took down that sum and receipted the clerk therefor after the judgment in that proceeding had been affirmed by the Supreme Court of the United States, that fact could not have appeared in the record in this case which was made up at the October term, 1904, of the Scott Circuit Court, but as already said, it was conceded and admitted in open court by counsel for plaintiff on the argument of this appeal in this court.

It is at once apparent that unless we overrule our former decisions in this identical matter, they present an insuperable obstacle to plaintiff's recovery of the strip of land for which it sues in this case. While we see nothing in the contentions of plaintiff that was not

fully considered and decided to the contrary in our opinions on the two former appeals reported in the 174 Mo. 1, and the 194 Mo. 175, and might well rest our decisions now on the authority of those cases upon the well settled rule that when the law of a case is settled on appeal it becomes and is the law of the case on a second trial, especially when the cause was reversed with specific directions (Rees v. McDaniel, 131 Mo. 681; State ex rel. v. Edwards, 144 Mo. 470; Overall v. Ellis, 38 Mo. 209); it may be as well to add that two pertinent reasons suggest themselves in addition to what was said in those opinions, why, even if we had doubts as to their soundness in this particular case, they should not be disturbed as against the defendant herein.

I.   When this cause was here on the first appeal, involving the right of the defendant bridge company to appropriate this particular strip of land for its approaches and terminal yards, every reason now urged was pressed on this court against said right, but this court held those objections were untenable and reversed the judgment denying that right with specific directions to the circuit court to allow said appropriation and appoint three commissioners to assess the damages for such condemnation and the circuit court followed our judgment and rendered its judgment condemning the strip now in suit, and upon the strength of our judgment the defendant took possession of said strip after depositing the damages assessed by the commissioners, and afterwards by the jury, and proceeded to construct its piers and grade and construct its tracks connecting its bridge with the Missouri shore, at an immense outlay of money and labor.

In a word, property rights of great value have been acquired by defendant on the strength of and in reliance upon our judgment as to this particular tract of land.   This court, in Reed v. Ownby, 44 Mo. l. c.

206, among other things, said: "We are asked to review the question and determine the law otherwise. This we are not at liberty to do. The law has been settled for many years; it has become a rule of property, and titles have been vested on the strength of it. Under such circumstances the error would have to be most palpable to justify this court in overruling previous decisions. The stability of judicial decisions is of the utmost consequence, as on them reposes the security of property; and they are not to be tampered with to suit the views of different persons."

In Dunklin County v. Chouteau, 120 Mo. 593, this court, through Judge BLACK, said: "Whether the power to subscribe for stock and the power to use the lands in payment for the stock are so far independent of each other that a sale of the lands to the company would be valid, though no vote as to the subscription had been taken, presents a question we need not consider on this appeal. We say this because *this court* held the very sale now in question valid. [Dunklin County v. District Co. Court of Dunklin County, 23 Mo. 449.] It thereby established a rule of property which has been acted upon during all that period of time, *and as to these lands it ought to be followed, whether in our opinion the judgment then rendered is right or wrong.*" In no class of cases is the rule of *stare decisis* more rigidly adhered to than in cases which concern title to real estate. [Reed v. Ownby, 44 Mo. 204.]

In the subsequent case of Wilson v. Beckwith, 140 Mo. 359, this court in Banc had occasion again to consider the doctrine of *stare decisis* and it was said this doctrine should properly be restricted to "like cases," that is to say, to cases which are alike in principle or in substance, but when invoked in like cases its force was fully recognized and adopted. If the doctrine is sound and salutary in merely "like cases," how much more apposite and potent that it be adhered to in a

case like this where it is not only *like* but is the ruling upon the identical state of facts upon the identical tract of land and invoked in the court which decided the prior cases, upon which defendant relies for its defense to this action? Accordingly, we hold that as to this defendant, its right to the strip of land in controversy, even if we were at all doubtful as to the soundness of our opinions in So. Ill. & Mo. Bridge Co. v. Stone, 174 Mo. 1, and 194 Mo. 175, cannot now be disturbed, as it acquired the same upon the faith of those decisions.

II. But this is not all. When the plaintiff in this cause after the affirmance of the judgment of this court in 194 Mo. 175, by the Supreme Court of the United States, in 206 U. S. 267, accepted and took down the damages awarded to it by the judgment of the circuit court of Dunklin county as damages and compensation for this very strip of land, it foreclosed forever its claim to the possession of this strip. If it be said that the acceptance of this fund by plaintiff is not in the record, it may be replied that its acceptance coming as it did after the appeal in this case had been perfected, it is obvious it could not have been put into the record, but this presents no insuperable barrier to its consideration by this court. Thus, in Haggerty v. Morrison, 59 Mo. 324, on appeal from a judgment after the cause had reached this court, the defendant filed in this court a certificate of discharge in bankruptcy and called this court's attention to the fact that the judgment appealed from had been allowed against his estate in bankruptcy prior to his discharge, and this court admitted the plea and entered an order discharging him from said judgment. In Dulaney v. Buffum, 173 Mo. 1, the plaintiffs in an action for tort having been defeated in the circuit court on demurrer, appealed to this court. After the appeal, plaintiffs settled with two of the defendants,

and that fact having been brought to the attention of this court, the action was dismissed as to them and subsequently the other alleged joint tortfeasors moved a discharge for dismissal as to them also on the ground that satisfaction from one joint tortfeasor, whether received before or after recovery, extinguishes the right of recovery, and this court sustained the contention and dismissed the appeal. That case was subsequently followed in Collins v. Crawford (214 Mo. 167) by Division No. Two of this court, and by this court in Banc in Wait v. Railroad, 204 Mo. 505 and 506. [In Re Hutton's Estate, 92 Mo. App. 132.] If the plaintiff then had accepted the $10,000 damages adjudged to it by the circuit court before its appeal had been determined, it is obvious under the decisions of this court, said appeal would have been dismissed by this court upon the evidence of satisfaction being shown to this court. [Robards v. Lamb, 76 Mo. 192.] In that case Judge NORTON, speaking for this court, said: ''Can a party appeal from a judgment in his favor after having accepted the fruits of the judgment and satisfaction of it?'' The answer was in the negative. [Cassell v. Fagin, 11 Mo. 207; Chase v. Williams, 74 Mo. 429.] In the last case the suit was to set aside a trustee's sale and to redeem the property. The circuit court refused to set aside the sale. Among other things this court said: ''Plaintiffs, in the decree, which by this appeal they are seeking to overthrow, *ratified the sale* they are seeking to have vacated, by having the trial court, on their motion, decree and order the sheriff who made the sale to pay over to them the surplus proceeds of the sale remaining after paying the note, interest and cost of suit.'' [Austin v. Loring, 63 Mo. 19.]

In Austin v. Loring, 63 Mo. 19, Judge WAGNER, for this court, reviewed the doctrine of estoppel. In that case a defendant's land was sold under a judgment which was void for want of service. Austin pur-

chased the land and paid his bid to the sheriff who satisfied the judgment and the defendant demanded and received the surplus. Afterwards defendant quitclaimed the land to Loring, who took with notice. This court held Loring stood in the shoes of the defendant and was estopped by defendant taking the surplus and thus ratifying the sale, saying: "But no person will be allowed to adopt that part of a transaction which is favorable to him, and reject the rest to the injury of those from whom he derived the benefit. . . . 'Where a sale is made of land,' said Lewis, J., in Smith v. Warden (19 Pa. St. 424), 'no one can be permitted to receive both the money and the land. . . . Where a party has taken the fruits of a judicial proceeding, he should not afterwards be heard to question it.' " So in this case when plaintiff sought and obtained an order from the circuit court directing the clerk not to pay the damages, the $10,000, to Stone and Finley, but to pay it to them, and afterwards received said money from the clerk, it became estopped by that action, irrespective of any error in the condemnation proceedings, from further claiming the land in suit, or questioning the validity thereof, and that estoppel is just as effective against assailing said condemnation proceeding collaterally as if the estoppel had been invoked in the direct proceeding to appropriate the land in suit.

The judgment of the circuit court is affirmed. *Burgess, Fox, Lamm, Graves* and *Woodson, JJ.,* concur; *Valliant, J.,* concurs in paragraph number 2 of opinion.