IRL R. HICKS et al., Appellants, v. CITY OF ST. LOUIS et al.

**Division One, June 1, 1911.**

INJUNCTION: Complied With After Appeal: Merits Not Considered. Where citizens of St. Louis county brought injunction against the city of St. Louis, to enjoin the city from shutting off water from the city's water works, from which they had for some time been obtaining water for their residences and other property, and lost in the trial court, and appeal, and after their appeal the city, at their request and in pursuance to legislative authority granted by the State, enacted ordinances authorizing water to be continued to be furnished to them, on terms acceptable to them, and said ordinances are properly and without objection before the court, the appeal will be dismissed; for, conceding appellants are right in their contention that the arrangement between them and the city, by which the city for years supplied them with water, amounted to an irrevocable license, they would gain nothing by a decision so holding, since the ordinance grants them all they could obtain by a decree, and therefore the case is purely a moot one.

Appeal from St. Louis City Circuit Court.—*Hon. James E. Withrow,* Judge.

Dismissed.

*George S. Grover* for appellants.

*L. E. Walther* and *Truman P. Young* for respondents.

WOODSON, J.—This suit was instituted in the circuit court of the city of St. Louis, seeking to enjoin the city from refusing to furnish water to the plaintiffs, who are residents of St. Louis county, outside of, but in near proximity to, the western boundary of said city.

On July 16, 1906, the court issued a temporary injunction against defendants, in conformity to the prayer of the petition. Thereafter, a trial was had before the court, and the cause was taken under advisement until December 10th, of the same year. On the latter date, the temporary injunction theretofore issued, was continued in full force until the city should by ordinance cut off appellants' water supply or until the city should by ordinance authorize said water supply, or until the further order of the court; and at the same time the case was dismissed as to the city and Mayor Wells, thereby leaving the cause pending against F. Scharwitz, the assessor and collector of water rates of said city. The then accrued costs in the case were taxed against the city water commissioner.

In June, 1907, the temporary injunction theretofore issued was by the court dissolved, and the bill dismissed, and all the costs accruing in the cause since December 10th, 1906, were taxed against the plaintiffs.

After moving unsuccessfully for a new trial, plaintiff duly appealed the cause to the St. Louis Court of Appeals. Thereupon, the court made an order continuing in force the temporary injunction theretofore dissolved, pending the appeal.

On September 23, 1907, the latter court, by an order duly entered of record, transferred the case to this court, for the reason that the city of St. Louis, a party to the suit, was a political subdivision of the State, and therefore, this court had the sole appellate jurisdiction of the controversy.

The facts of the case are few and are practically undisputed.

For a period of more than ten years prior to the institution of this suit, appellants had lived, and still live, in the extreme eastern edge of St. Louis county, only a short distance west of the western limits of the city of St. Louis.

During the period first mentioned, and prior thereto, the rapid growth of the western part of the city resulted in the settlement of a large population beyond the western limits of said city, in the eastern edge of said county. Practically, there is no difference in appearance between that part of the city and the eastern part of the county. On both sides of the imaginary dividing line, the streets and alleys, lots, and blocks are the same, and the houses and improvements upon the lots and blocks upon the one side correspond in location and character to those upon the other. In this entire territory of the city, sewers have been constructed as necessities, and wells, cisterns and vaults condemned, and either filled up or unused, as a necessary sanitary measure.

As early as the year 1893, upon application of the residents of that portion of the county, the city water commissioner began supplying them water from the city water works; but upon what authority he did so does not clearly appear from this record. Doubtless, however, it was under the authority of some ordinance.

The city had previously laid water mains to various points along its western limits. At those points, connections were made with those mains by private

pipes constructed and maintained in the county at the expense of, and leading to the various premises of the appellants. A water meter was placed just inside .the city limits at the end of the city main, which was also at the expense of the consumers, through which the water from the city water works was measured into the pipes of the private consumers residing in the county; but unlike the city consumer, the county consumer paid for his water and pipe and kept both in repair at his own expense, as well as becoming responsible for all leakage. The water thus supplied to the county consumer was paid for by him twice a year, in advance, under written licenses countersigned by the city comptroller, and collected at water rates the same as in all parts of the city.

Relying upon the faith and permanency of that arrangement, the county consumers, including appellents, expended and invested large sums of money in the erection of buildings and in making other valuable and permanent improvements upon their premises. That arrangement was quite profitable to the city, and added to the surplus fund of the water department, which was properly used by the city for some of its various needs.

For many years prior to 1906, the Board of Public Improvements of the city, of which the Water Commissioner was a member and still is, had supplied and still supplies city water to the residents of that part of the county on the terms before stated. The city water supply is not only sufficient for its own necessities, but is ample for that part of the county formerly mentioned.

No objection was ever registered against the city supplying the residents of the county with water, until the organization of what is called the "County Water Company," in the year 1902, and it is surmised that the latter company had something to do with the

threatened discontinuance of said water supply by the
city.

Appellants' evidence tended to show that the latter
company had a small pumping station on the Missouri
River, some twelve or fourteen miles west of the city
limits, and had begun to extend its water pipes into
a portion of the territory above described; but those
pipes did not reach a portion of the territory occupied
by appellants, and by others who are parties to simi-
lar suits to this one, until after this and those suits
had been instituted, and then only with such small
supply pipes as to furnish an insufficient water supply
for that part of the county.

After the question had been raised as to the right
of the city to furnish water to residents of the county,
the mayor of the city requested an opinion from the
city counselor, as to the right of the city to furnish
water for the use of persons residing beyond the city
limits.

In reply to that request, the city counselor replied
that under an act of the Legislature, passed in the
year 1899, the city had the authority to do so, but that
a city ordinance was necessary to put that act into
operation.

In March, 1906, the city collector of water rates,
acting under the orders of the mayor, notified appel-
lants that the city water supply would be cut off on the
30th of that same month, unless good cause was shown
to the contary.

Upon the receipt of said notice, the residents of
that territorry entered a protest against said threat-
ened action of the collector of water rates, which
resulted in the suspension of said action for the time
being, at least; and in March, May, and June of 1906,
said collector reissued water licenses for a supply of
city water to said county residents, including the ap-
pellants, for various periods ending in the months of
September, November, and December of the same year,

and received in return therefor the regular water rates prescribed by an ordinance of the city, which the city still retains.

In June, 1906, the mayor peremptorily ordered the city collector of water rates to cut off appellants' water supply on July 1st, of that year, and they were duly notified of said order of the mayor.

In consequence of said threatened action of the city, to shut off appellants' water supply, this suit was instituted in June, 1906. Then followed the temporary restraining order before mentioned, as well as all the other proceedings of the court heretofore stated.

Such additional facts as may be necessary for a proper disposition of the case will be noted in the opinion.

Appellants base their claim for relief sought in this case, upon the contention that the arrangement made and entered into by and between them and other residents of the eastern part of St. Louis county, and the city of St. Louis, by which the latter furnished the former with water from the city water works, amounted to an irrevocable license on the part of the city, and that it could not legally revoke the same.

Since the rendition of the decree in this case, the city of St. Louis, at the instance and request of the appellants and others similarly situated, in pursuance of the Act of 1899, previously mentioned, enacted ordinance No. 23,568, by which the city granted to them the right and privilege to draw and use water from the city mains just as they had previously been doing.

While this ordinance was passed subsequent to the taking of the appeal in this case, nevertheless, appellants have brought it here by their supplemental abstract of the record, to which counsel for respondents, not only do not object, but upon the contrary, admit it to be true.

Based upon that showing, counsel for respondents insist that this appeal should be dismissed, for the

.reason that the city, by said ordinance, has granted to appellants all the rights and remedies they demand, or could receive by this suit even though the appeal was meritorious when taken.

In discussing a similar question in the case of State ex inf. v. Standard Oil Co., 218 Mo. l. c. 388, this court, In Banc, said: "As to the first proposition. we have no hesitancy in saying that as an abstract legal proposition under ordinary circumstances any defendant in a suit may abate the same, by voluntarily doing all the things which the pleadings in the cause pray the court to compel him to do; and this may be done on motion at any stage of the litigation, before or after trial, or before or after an appeal is granted." Then follows quite a lengthly review of the authorities bearing upon that point. The same rule was announced by this court in the cases of Cape Girardeau & Thebes Bridge Terminal Railroad Company v. Southern Illinois & Missouri Bridge Company, 215 Mo. 286, and State ex rel. v. Philips, 97 Mo. 331.

After a careful consideration of said ordinance, we are satisfied that it grants to appellants all the rights which they could possibly have obtained by the decree of this court, conceding that they were entitled to the decree prayed for.

By requesting the passage of said ordinance, and accepting the benefits thereof, the appellants have resolved the questions presented by the petition in the case into moot questions purely, which this court will not pass upon. See cases supra; also, American Book Co. v. Kansas, 193 U. S. 49. We, therefore, dismiss the appeal without passing upon the merits of the case.

All concur.