# H. CLAY PHELPS, Respondent, v. CAPE GIRAR-DEAU WATER WORKS & ELECTRIC LIGHT COMPANY, Appellant.

### St. Louis Court of Appeals, May 7, 1912.

1. **APPELLATE PRACTICE: Review: Matters Arising After Appeal.** Matters arising in a cause after an appeal has been granted may be presented to the appellate court and considered by it in disposing of the case.

2. ——: ——: ——: **Statute Considered.** Where plaintiff, in an action for damages against a water company for the breach of a contract in shutting off the water supply for a hydraulic elevator, also brought mandamus to compel the restoration of the service, and after a verdict and judgment for him and an appeal by defendant in the damage action, dis-missed the mandamus, upon the water service being restored, and defendant then moved in the appellate court to dismiss the damage action, on the ground that it had been substantially abated by the result of the mandamus proceedings, an objection by plaintiff that the court could not consider such proceedings, under Section 2081, Revised Statutes 1909, because they had not been presented to the trial court, was not tenable, in view of the fact that they did not occur until after the appeal had been granted.

3. ——: ——: **Moot Questions.** The duty of an appellate court is limited to the decision of actual, pending controversies, and it should not pronounce judgment upon abstract questions, however such opinion might influence future action in like circumstances.

4. ——: **Matters Arising After Appeal: Effect: Scope of Review.** Plaintiff sued defendant waterworks company for damages for refusing to furnish water for an elevator in plaintiff's hotel, as required by a contract they had made, and afterwards brought mandamus to compel defendant to restore the water service, alleging the contract and defendant's violation of it, and defendant set out in its answer to the alternative writ a letter from plaintiff to defendant to the effect that he had repaired the elevator and desired that the water be turned on, and also set out defendant's reply thereto, notifying plaintiff that it had turned on the water under the old contract. Upon this answer being filed, the mandamus proceeding was dismissed by plaintiff, but not until after a judgment for plaintiff in the damage action and an appeal therefrom by defendant. Defendant moved in the appellate court to dismiss the action, as substan-

tially abated by the result of the mandamus proceeding. *Held*, that the action could not be dismissed, but that the disposition of the mandamus proceeding left open for determination only the amount of damage which plaintiff was entitled to recover up to the time the service was restored, and that the cause should be remanded to enable the trial court to determine that matter.

5. **DAMAGES: Measure of Damages: Breach of Contract: Cutting off Water Supply.** In an action for damages against a water works company for wrongfully shutting off water from the elevator in plaintiff's hotel, after having contracted to furnish it for a certain time, thereby rendering the elevator inoperative, where it appeared that plaintiff had leased the hotel, and that the lessee had agreed to repair the elevator and that plaintiff had agreed to furnish and pay for the water used in operating it, the measure of damages was the loss of rental of the hotel between the discontinuance and restoration of the water service; plaintiff not being entitled to recover for loss of patronage by the lessee, by reason of the elevator being rendered inoperative, nor for the expense of repairing the damage to the elevator.

6. **CONTRACTS: Threatened Breach: Cutting off Water Supply: Remedies.** If a water works company threatened to shut off the water used under a contract to operate a hotel elevator, the hotel owner could either restrain the threatened action, or compel the restoration of the water service by mandamus after it was shut off, or sue for a breach of the contract as in tort for damages resulting from wrongfully shutting off the water, in which latter case he could only recover damages sustained up to the commencement of the action.

Appeal from Cape Girardeau Court of Common Pleas. —*Hon. R. G. Ranney,* Judge.

REVERSED AND REMANDED.

*Ely, Kelso & Miller* for appellant.

(1) In an action for a negligent injury to real estate the rule of damages as generally adopted is to allow the plaintiff the difference between the market value of the land immediately before the injury occurred and a like value immediately after the injury is completed. But this rule has no application to such nuisances as may be removed the day after the verdict, or for the continuance of which a second or third action

may be maintained, or which may be obviated at the instance of the injured party by the order of a competent court. Brown v. Railroad, 80 Mo. App. 457. (2) The motion to dismiss should be sustained. Haggerty v. Morrison, 59 Mo. 324; Delaney v. Buffum, 193 Mo. 1; Railroad v. Bridge Co., 215 Mo. 287.

*Robert H. Whitelaw* and *T. D. Hines* for respondent.

(1) In cases where there has been a partial performance of the contract before the breach, the defendant should be charged with the costs and expenses of the plaintiff in completing that part of the contract remaining unperformed, provided such expenses are reasonable and are not too remotely connected with the breach complained of. 13 Cyc., p. 157. And where parties to a contract have such knowledge of special circumstances affecting the question of damages as that it may be fairly inferred they contemplated a particular rule for estimating them and entered into the contract on that basis, that rule should be adopted. 13 Cyc., p. 156; Thomas v. Peterson, 24 S. W. 1125; Water Power Co. v. Electric Light & Power Co., 76 S. W. 577. (2) In this case respondent had the right to elect whether he would sue on the contract or in tort, for "as a general rule where there is a breach both of contract and of a duty imposed by law, the plaintiff may elect to sue either in contract or in tort." Wernick v. Railroad, 131 Mo. App. 37; 4 Elliott, Railroads, sec. 1693; Chitty's Pleadings, p. 153; 28 Am. & Eng. Ency. Law, 625, 632. Mandamus is not the only remedy. An independent suit for damages may be maintained. Gardner v. Gas and Electric Co., 154 Mo. App. 666. (3) We come finally to consider a matter wholly outside the record in this cause, on which the trial court not only did not pass but on which it was not called upon to pass. Respondent earnestly contends that this cannot be done, that it is forbidden by statute

and the uniform holdings of this court and of the Supreme Court in many cases. R. S. 1909, sec. 2081; Bank v. Flannagan, 129 Mo. 196; Hubbard v. Slavens, 218 Mo. 616; Gilchrist v. Bryant, 213 Mo. 442.

REYNOLDS, P. J.—Under date of September 19, 1903, plaintiff, about to erect a hotel in the city of Cape Girardeau, obtained an agreement from defendant, in substance following: "On completion of the hotel . . . it is agreed by the Cape Girardeau Water Works and Electric Light Company, party of the first part, and H. C. Phelps, party of the second part, that for and in consideration of the sum of two hundred dollars per annum, payable quarterly, that the Cape Girardeau Water Works and Electric Light Company furnish sufficient water to run an elevator in the building H. C. Phelps is now erecting next to the post office. This contract is to run for ten years after the completion of the building, and when the elevator commences operations; that is, when the elevator starts running. If at any time during the continuance of this contract the building should be vacant for over thirty days, it is agreed by both parties that the parties of the first part does not charge the party of the second part for the time it is vacant, provided the water is turned off." This was signed by both parties. The hotel contemplated was erected by plaintiff sometime in 1903 and occupied January 1, 1904, and on its erection plaintiff leased it to various parties for short terms, and finally, on May 27, 1907, leased it to one Lennington for a term of three years, the term commencing June 1st of that year and ending May 31, 1910, with an option to the lessee of two years renewal after the expiration of the three-year lease, the lessee agreeing to pay the lessor as monthly rental, payable in advance by the month for the first six months of the lease $175, and for each and every month thereafter during the remaining two and one-half years of the

term the price and sum of $200, and for the two years extension a monthly rental of $200 payable in advance during each month of said two years. Among the covenants in the lease and the only one in it by the lessor relating to the elevator is this: "It is understood that said Phelps, the said party of the first part, is to pay for all water to run the elevator in said hotel, but all other water is to be furnished by the party of the second part at his own expense." On part of the lessee there is this covenant: "The said Grant E. Lennington, said party of the second part, agrees and binds himself to operate said hotel in an orderly manner, to keep in repair at his own expense the elevator, the electric wires, plumbing and furnace, the locks to doors and windows," etc. There is this further covenant on the part of the lessee: That he "is to keep in repair the screens for the doors and windows of the said hotel building, and such other repairs that would add to the comfort of the guests at said hotel at his own expense, except permanent repairs to the building, which when first consented to by the said party of the first part, are to be paid for by said party of the first part, H. Clay Phelps." It is further covenanted that the failure to pay rent at the times stipulated in the lease and to keep up repairs shall work an immediate forfeiture of the lease, and, finally, it is covenanted that "if the plumbing, elevator, sashlocks or any other things mentioned to be kept in repair by Lennington by terms of the lease is out of repair at this time, the same is to be placed in repair by Phelps." The elevator, a hydraulic one, appears to have been installed at the time of completion of the building and the water turned on and there appears to have been no trouble between the parties until about October 21, 1909, on which date the superintendent of defendant company wrote plaintiff a letter to this effect: "It has been reported by our foreman that the hydraulic elevator in the Terminal Hotel, owned by you, is leaking very

badly. This must be repaired within three days, or we will be compelled to discontinue the service. We also desire to take this occasion to notify you that a water meter must be installed in the supply pipe to the elevator immediately, as we can no longer continue the flat rate which you have previously had. This meter must be installed by November 1st, or thereafter we will have to bill you for service for same at the rate which we estimate that the elevator uses water, which will be a great increase over your present rate." It appears that plaintiff refused to put in the meter and on the 29th of October, 1909, defendant turned off the water from the elevator, whereupon on the 2nd of November, 1909, plaintiff instituted this action.

In his petition he sets out that he is the owner of the hotel, a five-story building erected by him for and used as a hotel building and called the Terminal Hotel; that defendant is and was at the time in the petition mentioned, a public service corporation, organized and existing under the laws of this state and located at the city of Cape Girardeau for the purpose of furnishing water to the city and the inhabitants thereof for public and private uses; "that it is absolutely necessary in order to run and operate said hotel, to have an elevator for the use of guests, in going from the lower to the upper stories and vice versa;" that on the 19th of September, 1903, defendant entered into the contract before set out; that plaintiff complied in all things with the terms and conditions of the contract but that defendant, wholly disregarding its duty to plaintiff and in violation of its agreement with plaintiff, on the 29th of October, 1909, without any just cause or excuse, willfully and maliciously and with the intent to injure plaintiff by depriving plaintiff and his tenants of the use of the elevator turned the water off from the same, "so that the said elevator is useless to him and his tenant to their great injury and annoyance and by so doing has injured the earning capacity

of said hotel to the amount of many thousand dollars;"
that plaintiff having full faith in the fair dealing and
honesty of defendant leased the hotel building to Len-
nington and guaranteed to him the full use and benefit
of the elevator service for the time that the contract
had to run with defendant or, so long as Lennington
should remain the tenant of plaintiff; "that the action
of the defendant in refusing to comply with the terms
of its said contract has caused a loss to the patronage
to said hotel amounting to many thousand dollars, in
driving away transient and regular boarders who are
not able or willing to walk up the five stories of said
building to their rooms." It is further charged that
the action of defendant was done willfully and inten-
tionally and for the purpose of injuring and destroying
the value of plaintiff's property as a hotel and driving
guests away from it to some other place and for no
other purpose; "that neither plaintiff or his tenant was
in debt to it in any sum whatever for water, but in
order to avoid any excuse on that score plaintiff ten-
dered and here now tenders to defendant the sum of
fifty dollars in advance for the use of said water for
said elevator for this quarter." Averring that he has
been damaged in the sum of $5000 by the unlawful act
of defendant in cutting off the water from the elevator
in actual loss and has sustained $5000 damage for the
willful and malicious acts of defendant, plaintiff prays
judgment in these amounts.

The answer, after a general denial, pleads that
the service of water to the elevator had become in-
sufficient through the carelessness and negligence of
plaintiff and that the elevator in its then condition had
wasted approximately one-half million gallons of wa-
ter per day and that plaintiff had refused and neglected
to repair it and for a long time prior to the 29th of
October, 1909, maintained the elevator in such bad
shape of repair and in such bad working order as to
render it impossible to furnish a sufficient amount of

water to operate the elevator without wasting many times the amount of water necessary to properly run and operate the elevator, and that plaintiff was wasting approximately during every twenty-four hours water of the value of $170. Setting up that the city of Cape Girardeau has a population of some 15,000 inhabitants with many manufacturing plants and private consumers of water' who have to rely on defendant for their supply and that the unreasonable and unconscionable waste by plaintiff reduced the pressure to such an extent as to endanger the water supply in case of fire and as to constitute in law and equity an unwarrantable confiscation of property by plaintiff and a fraud upon the rights of defendant, defendant further pleads that it is operating under an ordinance of the city of Cape Girardeau, under a section of which and by rules and regulations adopted under the ordinance, it was authorized to shut off the supply of water until plaintiff should take the necessary steps to repair the elevator; that the contract mentioned in the petition is subject to this ordinance and the reasonable rules of defendant, which are set out, one of which provided that defendant may require customers to use meters; that a failure to comply with these rules authorizes defendant corporation to cut off the water supply. Defendant further sets up counterclaim in the sum of $10,000, damages alleged to have been sustained by it from the excessive use of water by the plaintiff. All these defenses were controverted in the reply which further charges that whatever trouble there may have been in the water supply or in the elevator pipes was caused by defendant allowing broken rock and sand and other foreign substances to get into its pipes and from these into the pipes of the elevator.

There was a trial before the court and jury, the trial commencing December 16, 1909, at the conclusion of which, on December 21, 1909, the jury returned a verdict in favor of plaintiff in the sum of $3667.66.

Interposing a motion for new trial as also one in arrest and excepting on these motions being overruled, defendant has duly perfected its appeal to this court.

The cause was transferred by us to the Springfield Court of Appeals under what was supposed to be the law authorizing such action but afterwards came back to us from the Springfield Court of Appeals and has been submitted to us on briefs and oral argument. The record in the case is voluminous, the abstract covering 445 printed pages.

After the cause reached this court on appeal, appellant interposed a motion to dismiss the cause of action on the ground that on the 30th of October, 1909, plaintiff in this cause, respondent here, setting up the contract here sued on and charging that defendant, in violation of that contract, had shut off the water service from the elevator, had prayed for the writ of mandamus to issue out of the Court of Common Pleas of Cape Girardeau, the same court in which this cause was pending, to compel defendant to restore that service or show cause why it should not do so. The defendant thereupon appeared and for answer to the alternative writ, set out a letter from plaintiff to defendant, to the effect that he (plaintiff) had repaired his elevator and desired that the water be turned on, and a reply to this letter notifying the plaintiff Phelps that it had turned on the water under the old contract, the elevator having been repaired. It is further set up in this motion that upon the filing of this answer to the alternative writ of mandamus and at the February term, 1910, of the Cape Girardeau Court of Common Pleas, the relator in that proceeding, plaintiff here, took a nonsuit in or dismissed the mandamus proceeding. A copy of the record of all this, duly certified, was filed with us along with this motion to dismiss the action, it being suggested by the counsel for appellant that the cause of action by these proceedings pending at the time of the appeal has abated by reason of the

subsequent proceedings under the mandamus. This motion of appellant as well as the certified copy of the record in the mandamus, were submitted along with their brief on the case by counsel for appellant. Counsel for respondent both in their printed argument and brief as well as in their oral argument before us, not denying the facts as set out in the answer in the mandamus, or as to the dismissal of that proceeding, resisted the motion, contending that this defense should have been interposed in the trial court in this case, and that it is beyond the power of this court to consider any exceptions not passed on in the case by the trial court, relying upon section 2081, Revised Statutes 1909, and the decisions under it by our Supreme Court in St. Louis National Bank v. Flanagan, 129 Mo. 178, l. c. 196, 31 S. W. 773; Gilchrist v. Bryant, 213 Mo. 442, l. c. 443, 111 S. W. 1128; Hubbard v. Slavens, 219 Mo. 598, l. c. 616, 117 S. W. 1104.

In the light of this record and the admissions of counsel for respondent, it is doubtful whether there is any further substantial matter in litigation before us. Our Supreme Court has determined in Haggerty v. Morrison, 59 Mo. 324; Dulaney et al. v. Buffum et al., 173 Mo. 1, 73 S. W. 125; and Cape Girardeau & Thebes Bridge Terminal Railroad Co. v. Southern Illinois & Missouri Bridge Co., 215 Mo. 286, 114 S. W. 1084, that matters arising in a cause after an appeal has been granted may be presented to the appellate court and be considered by it in disposing of the case.

More directly in point in the case at bar, but in line with the above cited decisions of our own Supreme Court are the decisions of the Supreme Court of the United States in Richardson v. McChesney, 218 U. S. 487; Buck's Stove & Range Co. v. American Federation of Labor, 219 U. S. 581; Gompers v. Buck's Stove & Range Co., 221 U. S. 418, l. c. 451.

It is argued that appellant, not having presented the proceedings in the mandamus in the trial court

as part of this case, when, as it is claimed, they all appear to have been had pending the trial and determination of the case at bar, cannot now inject them into this case. The trouble with this contention is, that the material, the substantial matter, that is, dismissal of the proceedings under the writ of mandamus by the respondent here, did not occur during the pendency of the cause in the trial court but at the term succeeding that at which the appeal had been prayed for and granted in this cause. Hence section 2081 and cases cited construing it, have no application here. As said by the Supreme Court of the United States in Richardson v. McChesney, supra, l. c. 492, "the duty of the (appellate) court is limited to the decision of actual pending controversies and it should not pronounce judgment upon abstract questions, however such opinion might influence future action in like circumstances." In Gompers v. Buck's Stove & Range Co., supra, that court has said that when the main case was settled every proceeding which depended on it or was a part of it was also necessarily settled. So that when it appears in an action pending before an appellate court that the matter theretofore in controversy has been settled, has disappeared as a matter of litigation between the parties, subsequent to the appeal, the appellate court will not entertain jurisdiction of the cause on appeal.

In view of the outcome of the mandamus proceeding and what was there settled, the only question now open is as to the amount of damage this respondent can recover. The measure of that damage is the loss of rental sustained by respondent between the time the supply was cut off and the restoration of the service, provided respondent or his tenant, who under the covenants in the lease is charged with maintaining the elevator in repair, were not negligent themselves in allowing the elevator to become out of condition. This question is not concluded by the settlement of the mat-

ter in the mandamus proceeding, so far as appears. Hence we cannot dismiss the action entirely and can only reverse the judgment and remand the cause.

We would have to do that independent of the question raised by the introduction before us of the proceedings by mandamus, for the reason that the learned trial court proceeded upon a wrong theory both in the admission of evidence and in its instructions to the jury. The loss of rental between the discontinuance of the service and its restoration is the limit of recovery. Plaintiff below, respondent here, is not entitled to recover for loss of patronage by the hotel. A mass of testimony was admitted on this line. Nor does it appear that the lessee threw up the lease. It is equally clear that respondent cannot recover for any expense he may have been put to to repair the damage to the elevator, for it was covenanted between him and his lessee that the latter was to keep the elevator in order. The sole covenant of respondent, as to this, is, "to pay for all water to run the elevator in the hotel."

Respondent had three modes of redress and relief: First, when defendant threatened to cut off the water supply from the elevator service, it was open to plaintiff to resort to a court of equity to restrain by injunction the threatened action. Not choosing to follow that remedy, and he might property have refused to do so, it was in the second place open to him to resort to the writ of mandamus to compel the restoration of the service. He did this. Third, he might choose to take neither of these and resort to his contract and sue for its breach as in tort for the damages sustained. When he elected to resort to the latter, as he has here done, all that he can recover is the damage sustained up to the date of the commencement of this action, and that damage is the loss of rental which may have resulted from the time the water service

was discontinued up to the time of the commencement of this action, provided he was not himself in fault. Here he has recovered, under the instructions of the court, prospective damages—damages to the end of the ten-year contract. But no such damage is proved to have accrued, nor is there any evidence that they will accrue. If the tenant throws up the lease owing to the failure of elevator service, and the premises cannot be leased to another on the same rental, plaintiff's damage can be estimated. But that had not happened when this action was begun. If the other theory of damage is considered, that is, what it would cost respondent to procure motive power for his elevator, then that question has disappeared, for the service, as appears by the record before us in the mandamus proceedings, was restored after this appeal had been granted. All the questions as to the cost of installation of a new service; as to loss of custom to the hotel; as to the condition of the appliance of the elevator, even as to who was in fault in the first instance, are out of the case, save as to the latter, as to which there may be some question in determining whether defendant was warranted, by reason of defects in the elevator in shutting off in the first instance, and as to whether that had been settled between the parties when service was restored. If a new trial is had, we assume that all the proceedings under the mandamus will be in evidence under proper pleading.

Without further going into the case and reserving all questions presented as to the sufficiency of the petition and the construction of the contract, for determination, first by the trial court, then by this court if the case again reaches us, the judgment of the circuit court is reversed and the cause remanded. *Nortoni* and *Caulfield, JJ.*, concur.