AUSTIN SHERMAN, APPELLANT, v. MICHAEL McKEON, RESPONDENT.

*Street or Highway—Bounding of lot adjoining—Centre of street.*

Where the boundaries are on streets in the city, in the absence of evidence to the contrary in the grant, the lot will be presumed to be bounded by the centre of the street.

The intention of the grantor to otherwise bound the premises, is not manifested by a statement of the dimensions of the lot; and such statement must be subordinated to the description "bounded on the street, &c."

THIS was an action of ejectment, commenced in 1855, in the Superior Court of the city of New York, and tried in June, 1858, before Mr. Justice Pierrepont and a jury. It was brought against the Defendant, as a lessee of George Harrison, to recover possession of a quadrangular lot of land on the south-east corner of Bleecker and Grove streets, in this city, being about seventeen feet one inch in front, running back seventy-four feet ten and a half inches on both sides, and being about thirteen feet seven and three-fourths inches on the rear.

The premises were originally in 1810, and prior to 1837, a public highway and a part of Grove Street, which was north of the original city of New York, and south of the lands laid out on the commissioners' map, being part of what is called Greenwich village.

The Plaintiff, as evidence of title, proved a conveyance from the Manhattan Company to Charles Oakley, of four lots on the corner of Burroughs (afterward Grove) Street, and Herring (afterward Bleecker) Street, being seventy-five feet on Grove Street and ninety feet on Bleecker Street, dated August 17, 1827, and recorded August 25, 1827, under which deed Charles Oakley went into possession in 1827.

Plaintiff also proved certain judgments against Charles Oakley, and a deed from Thomas Carnley, sheriff, to the Plaintiff, dated January —, 1853, recorded January 10, 1853, reciting the execu-

tions on said judgments, and conveying to the Plaintiff all the right, title, and interest which Charles Oakley had on the 18th day of June, 1839, or at any time afterward, in and to the premises in question in this suit.

Plaintiff also proved a quitclaim deed from Charles Oakley to him, of the premises in question.

Plaintiff also proved that Charles Oakley, in 1838, inclosed the lot or gore in question by a board fence, and remained in the quiet and undisturbed possession thereof, until Harrison, the lessee of the Defendant, took possession in 1848 or 1849.

Plaintiff also proved that in January, 1836, proceedings were taken by the Mayor, Aldermen, and Commonalty of the city of New York, " to open a public place between Grove, Christopher, and Fourth streets, and to improving Grove Street between Fourth and Bleecker streets, by widening the same on the northerly side, and by closing a part thereof on the southerly side;" that an application for that purpose was made to the Supreme Court; that commissioners were appointed, who, on or about February 17, 1837, made their report, by which, among other things, they reported that a gore of land lying in Grove Street, on the southerly side (including the premises in question), was "required for the purpose of being closed, and vesting the same to the use of the Mayor, Aldermen, and Commonalty of the city of New York;" that unknown owners are seized of such strip of land "*in fee,* subject to an easement or right of way over the same, in the parties and owners interested in the premises bounded by and fronting on the same;" and that they had assessed the benefit and advantage to the said Mayor, etc., by and in consequence of said piece of land being converted to their use, to the amount of $5,125.

In their first report the commissioners made some small awards and assessments on Oakley's property, and advertised for objections, etc.

On hearing the objections, they reconsidered their action, and assessed on the pieces of land thereinafter designated, and by which designation the same had been described in said report,

the sums opposite thereto, instead of the sums mentioned in such report. Such additional report also stated, that the commissioners had allowed to the respective parties therein mentioned, the "amount set opposite their names, in lieu, and instead of the assessments set forth in such original report, that is to say, ' No. 51, Charles Oakley ($1,500), fifteen hundred dollars.' "

It appeared by the reports, that the sum assessed upon the corporation of New York, for benefit, by the conversion to their use of the part of Grove Street closed, including the land in controversy, was necessary, in addition to the other assessments made for benefit to other pieces of land, to make up the amount required to pay the estimate for damages to the owner of lands therein awarded, including the $1,500 so awarded to Oakley, and the expenses of the proceedings. It also appeared, that Oakley drew an order on the Comptroller for the sum awarded to him for the opening of Grove Street, which was paid.

The report was confirmed on April 5, 1837.

The Defendant read in evidence a deed from Oakley and wife to David H. Robertson, recorded March 18, 1839, conveying the same premises conveyed by the Manhattan Company to Oakley, and, by the same description as in that deed, with this difference, that, in one part, the words are, "northerly by the *late* line of Grove Street," instead of "northerly by Grove Street."

Also, a mortgage by Oakley to the executors of William W. Gilbert, for $15,000, recorded February 22, 1835, of the same premises, and by the same description as contained in deed from the Manhattan Company to Oakley; also, the proceedings in Chancery, by which this mortgage was foreclosed.

Also, a deed from Philo T. Ruggles, Master in Chancery, to James Dill, recorded February 8, 1847, of the lot bounded by the old line of Grove Street, and adjoining the lot in question; the lot in question was not included in Ruggles' sale.

Also, a deed from James Dill to George Harrison, of the same lot, recorded May 2, 1848.

The Defendant also put in evidence the map made for the com-

missioners to widen and improve Grove Street. On this map, the lot adjoining the premises is marked No. 51.

The Defendant also introduced in evidence a deed from the Mayor, Aldermen, and Commonalty of the city of New York, to George Harrison, of the lot in question, recorded October 20, 1847, the consideration of which was $3,100.

It was admitted that the Defendant took possession by virtue of this deed, as a lessee of said Harrison, and erected a building thereon.

Some other facts were proved, which are referred to in the opinion.

The Judge directed a verdict for the Defendant. Judgment was entered upon said verdict, and the Plaintiff appealed to the General Term of the Superior Court, where the judgment was affirmed, and the Plaintiff appealed to this Court.

*Charles W. Sandford* for Appellant.
*Malcolm Campbell* for Respondent.

MILLER, J.—The claim of the Plaintiff, that Charles Oakley, from whom his title is derived, acquired title by virtue of the deed executed by the Manhattan Company to him, appears to be well founded. The west and north boundaries of the lots are on two streets, and, according to well-settled principles, this includes, at least for certain purposes, to the middle of the street, unless there is evidence on the part of the grantor to exclude the street from the grant. (Hammond *v.* McLauchlan, 1 Sandf. 323; Jones *v.* Cowman, 2 id. 234; Adams *v.* Saratoga & Wash. R. R. Co., 11 Barb. 414.) Such intention is not manifest by the statement of the dimensions of the lot, and this statement must be regarded as subordinate to, and controlled by, the previous reference to the street, and the use of that term.

Assuming this to be the true construction of the conveyance to Oakley, then Oakley acquired title by deed to the land in Grove Street, in front of the premises taken possession of by him, to the centre of the street. His title and interest was sold by virtue of executions in certain judgments existing against him, and a sher-

iff's deed executed to the Plaintiff, conveying all the interest which he had on the ninth day of June, 1839. This deed was dated in January, 1853. Passing by the quitclaim deed made by Oakley to the Plaintiff in 1850, which is unimportant, the sheriff's deed conveyed a title to the premises to the Plaintiff, if Oakley's title had not been divested by some act of his, or by some lawful proceeding of the corporation of the city and county of New York, as is claimed by virtue of an ordinance directing Grove Street to be widened and opened, and which was passed in January, 1836.

The Defendant claims that Oakley's title was thus divested, and relies upon various acts, by virtue of which a title was acquired superior to the Plaintiff's title, and insists : first, that it was done by the foreclosure of the mortgage made by Oakley and wife, in 1835, and a deed of conveyance of the master, who made the sale to one Dill, in 1846, and by a subsequent conveyance of Dill in 1848 to George Harrison, who was the landlord of the Defendant, who occupied a portion of the premises covered by the deed to Oakley, and the mortgage in question ; second, by the conveyance of the title made by Oakley and wife to David H. Robertson, on the 18th day of March, 1839 ; and thirdly, by the proceedings had under the ordinance of the corporation of New York, passed in 1836, and the conveyance by the corporation of New York to George Harrison in 1847.

I. As to the title derived by the deed of the Master in Chancery to Dill and his grantee, it may be remarked, that this deed only conveyed two of the lots owned by Oakley, the boundaries of which commenced at a point on the easterly side of Bleecker Street, seventeen feet and one inch from the south-easterly corner of Bleecker Street, thus excluding expressly, as I understand from the description, the premises in question. It is quite plain that these premises cannot be conveyed as a mere appendage of those embraced in the deed.

II. It is also equally clear that the deed to Robertson did not include the lot in question, as the description bounds the premises by the "late line of Grove Street," evidently meaning the old line as it existed before the new one was established by the proceedings

had by the corporation, which, at that time, had been but quite recently confirmed. Although the conveyance states that this was the same premises conveyed by the Manhattan Company to Oakley, yet I think that the specific description must control, and they must be regarded as conveyed within these boundaries, without any modification or change, by the reference to the deed to Oakley. It is said that the expression employed will be presumed to refer to the late centre line, in connection with the words after the description "along and on Grove Street." I think that will not bear this interpretion. The description evidently makes a distinction between the old line and the new one, and, in stating a line for a boundary, it cannot well be said that the statement of itself makes the centre the line.

III. As to the title acquired by the proceedings of the corporation, and the conveyance to Harrison, which is the principal question to be determined in this case, it will be observed that these proceedings were commenced and consummated prior to any transfer of title by Oakley, and before any lien had been acquired by judgment upon the premises, against Oakley the owner. They date prior, in point of time, to any other supposed or real title; were in advance of the sheriff's deed, and Oakley's quitclaim to the Plaintiff, under which he establishes title ; and, if they can be sustained and upheld as effectual, to vest the title in the corporation to the gore declared to be regarded as closed, furnish a complete and perfect title, under the deed of the corporation, to the Defendant's lessor.

The first report of the commissioners appointed to make the estimate and assessment in the Grove Street improvement, declares that a certain lot of land which includes the premises in question was required for the purpose of being closed, and of vesting the title to the same in the corporation of the city of New York; and certain lots adjoining the aforesaid lot are described and designated as assessed and benefited by the improvement. In the margin, and opposite to a description of these several lots, is the name of "Charles Oakley," and a sum of money and certain numbers are placed under such description. The object and meaning of the

name, amounts, and numbers, is not stated. It is also stated in the report, that unknown owners are seized in fee to the premises so required to be taken, subject to the easement of a right of way over the same in the parties and owners interested in the lands and premises bounded by, and fronting on, the same. The additional, or second report, corrects the first by altering the sums assessed on certain of the lots, and by allowing to Oakley the sum of one thousand five hundred dollars, in lieu and instead of assessments set forth in the first report.

It cannot be denied that there is some obscurity in the language employed. It must be interpreted, however, in view of the facts elicited, and the circumstances surrounding the case. It is evident, I think, that the amount allowed to Oakley was for his right, title, and interest in or to the land in question, which, from 1810 until the proceedings to improve Grove Street were instituted, lay in the public street, and to which he claimed title, by reason of his being the owner of the land which was opposite to it, and which was bounded upon Grove Street. It is not reasonable to suppose that this large award could have been made for damages, which consisted in giving Oakley the same front on Grove Street as he had before enjoyed, and all the benefits of the improvement, as well as leaving him to enjoy the title to this additional lot. In fact, the commissioner's report, in entire contradiction of any such theory, purports to vest the title of the lands in the corporation. They could not have awarded any such amount, simply because the public would be prevented from using the land closed, and taken as a street.

The declaration, that the sum allowed was to be instead of assessments set forth in the first report, has no great significance in connection with the facts proved. If it can in any way be considered as having any bearing, it is entirely adverse to the idea of making any such allowance. So, also, the number at the end of the description appears to be without any apparent object. It is previously stated in the last report twice, as a lot assessed, which would be entirely inconsistent with making an allowance. The amount allowed was paid by the order to Oakley, as an award to

him, and must have been for his interest in the land taken and vested in the corporation, and for nothing else. The report declares, that the commissioners have estimated and assessed the benefit and advantage to the Mayor, Aldermen, and Commonalty of the city of New York, in consequence of the land required being converted to their use. It allows the sum of fifteen hundred dollars to Oakley; and the fair and rational inference is, that the sum allowed was for the extinguishment of Oakley's interest in the premises in question, and for vesting the same in the corporation. Upon no other hypothesis can such an allowance be satisfactorily explained, and it could not have been for any other purpose.

It is insisted by the counsel for the Appellant, that the laws under which this improvement was made, so far as they authorize the taking of private property for private purposes, are unconstitutional and void. This is undoubtedly true, when the power is exercised in opposition to the consent of the owner; but, when that consent is given, it is a waiver of the objection, and removes the difficulty. A party may renounce a constitutional provision made for his benefit, and, when the law which provides for a transfer of property does not require the consent to be in writing, it may be manifested by parol acts and declarations, so as to effect a transfer of the title to real estate, notwithstanding the Statute of Frauds. (Baker *v.* Braman, 6 Hill, 47; Embury *v.* Conner, 3 N. Y. 511.) The receipt of the money operates as an estoppel, and the damages paid have the same effect as a conveyance, and vest the title in the corporation. The consent of the Plaintiff is apparent from his conduct in the matter. He evidently appeared and interposed objections to the first report made by the commissioners, and probably induced them to make the award of one thousand five hundred dollars. He had a right to object to the confirmation of the report, upon the ground that the land was taken without his consent, and, had he done so, the report would have been set aside. (Matter of John and Cherry Sts., 19 Wend. 659.) This he failed to do, and consented to receive the money without objection. The corporation was not bound to pay the money, except upon a waiver of all objections as to the title con-

ferred, and his receipt of the money was a waiver of the objection, and a sufficient consideration for his affirmance of the title in the corporation. He received the money after he had inclosed the land; never offered to return it; remained quiet without asserting his claim, long after the possession was surrendered to the grantee of the corporation, who paid a valuable consideration for the conveyance; allowed him to improve it without making any claim, and left it for the Plaintiff, a purchaser upon an execution sale under an old judgment, sixteen years after the land was appropriated under the corporation ordinance, to bring an action for its recovery. The fact that Oakley took possession, and had it for some time, so far as it shows a claim of title, is sufficiently answered by the subsequent surrender to a party claiming title under the corporation deed, as well as by the other facts of the case.

Under the circumstances existing, it appears to me to be quite plain that the Plaintiff is precluded from asserting a title, and cannot maintain this action.

The judgment must be affirmed.

Judgment affirmed.

JOEL TIFFANY,
State Reporter.