[Civ. No. 4211. Third Appellate District.—November 19, 1930.]

WILLIAM F. DONEGAN, as Administrator, etc., Respondent, v. CITY OF LOS ANGELES (a Municipal Corporation), Appellant.

[Civ. No. 4212. Third Appellate District.—November 19, 1930.]

REBECCA LEE DORSEY, Respondent, v. CITY OF · LOS ANGELES (a Municipal Corporation), Appellant.

Jess E. Stephens, City Attorney, Clyde M. Leach and
Lucius P. Green, Assistant City Attorneys, and Joseph T.

Watson and Jerrell Babb, Deputies City Attorney, for Appellant.

Robert Young for Respondents.

MR. JUSTICE PLUMMER Delivered the Opinion of the Court.—The above cases were, by stipulation, consolidated for trial, and are, upon this appeal, presented to us upon one set of briefs, and, for convenience, will be hereafter referred to as the "Dorsey" case and the "Donegan" case, respectively.

In the respective cases the plaintiffs had judgment quieting title to the lots hereafter mentioned, and the defendant appeals from the judgment in each case.

On the twenty-seventh day of April, 1925, the plaintiff Dorsey began an action in the Superior Court of Los Angeles County to quiet title to lots 6, 12 and 13, in block 93, of the town of San Pedro, Los Angeles County. The first cause of action is in the common form of an action to quiet title. The second and third causes of action set out in the complaint do not require mention. In the fourth cause of action it is alleged that on the twenty-sixth day of November, 1912, the said Rebecca Lee Dorsey owned the title to the premises herein mentioned; that on or about said date there was entered in the Superior Court of Los Angeles County, in a certain action wherein the City of Los Angeles was plaintiff and Arthur S. Koyer et al. were defendants, a judgment and decree condemning said land and appropriating the same to the City of Los Angeles for the purpose of constructing thereupon, public warehouses. The complaint then alleges that the City of Los Angeles had no right or power under the law to condemn said land for such purposes. It is then set forth that in the judgment just referred to there was awarded to the said Rebecca Lee Dorsey, as compensation for the lands so condemned, the sum of $53,338.10, which was paid to her. It is further set forth in the complaint in this action that although twelve years and upwards have elapsed since the judgment of condemnation, the City of Los Angeles has not used said land, or any part thereof, for the construction of a public warehouse, and that the same is still vacant and unoccupied. The complaint then alleges that the city has

abandoned said land, and the title thereto has reverted to the said Rebecca Lee Dorsey; that on or about the twenty-seventh day of March, 1925, plaintiff tendered and offered in writing, to repay the City of Los Angeles the sum of $53,338.10, and in connection with said tender demanded that the city release and quitclaim to the plaintiff all interest in said land; that the defendant has not accepted said tender, and has refused the same, and neglected and refused to release and quitclaim said property to the plaintiff.

The answer of the defendant denies the allegations of the complaint, and then sets forth, among other defenses, the following: That in the action of *City of Los Angeles* v. *Arthur S. Koyer et al.*, 48 Cal. App. 720 [192 Pac. 301], mentioned in the plaintiff's complaint, an interlocutory judgment and decree was entered on the 4th of September, 1912, awarding to Rebecca Lee Dorsey the sum of $53,338.10, as the full amount payable to her as compensation for the lots set forth in plaintiff's complaint, and specifically described as lots 6, 12 and 13, in block 93, town of San Pedro, as per map recorded in book 84, pages 81 to 84, Miscellaneous Records of Los Angeles County; that the amount so awarded was paid to the said Rebecca Lee Dorsey on October 10, 1912, and accepted by her pursuant to said judgment and decree; that thereafter, a final order and judgment of condemnation was filed and entered, and the title to said property thereupon became vested in the defendant, and the defendant took possession thereof, and has continuously held possession of the same.

It is further set forth in the answer that the plaintiff received said amount awarded to her as compensation, without objection, and satisfied the said decree; that no appeal was taken by her therefrom, and that by reason of the acts herein stated said Rebecca Lee Dorsey waived any right or claim that she had, or might have had, to assert that the said condemnation proceedings were irregular or invalid, and that the said Rebecca Lee Dorsey was and is estopped to assert the irregularity or invalidity of said proceedings, or that the title to said property was not thereby vested in the City of Los Angeles, or that the same is not now vested in the City of Los Angeles, or that the City of Los Angeles is not possessed of the title in fee simple, and entitled to the

right of possession of the said premises. The answer further sets forth that the cause of action is barred by the provisions of sections 335 to 340, inclusive, of the Code of Civil Procedure.

The complaint in the Donegan case sets forth the death of D. F. Donegan and the appointment of William P. Donegan as the administrator of the estate of said deceased. The complaint then alleges that at the time of the death of D. F. Donegan, which took place on the thirtieth day of May, 1918, the said Donegan was the owner of lot 10 in block 93 of the town of San Pedro, as per map recorded in book 84, pages 81 to 84, Miscellaneous Records of the County of Los Angeles. The complaint further sets forth an allegation similar to that found in the Dorsey case; the entry of judgment in the action wherein the City of Los Angeles was plaintiff, and Arthur S. Koyer et al., defendants, being a condemnation proceeding. A judgment and decree was entered condemning the premises herein described and awarding the same to the City of Los Angeles; that in said award compensation was allowed D. F. Donegan in the sum of $18,892.60, which was paid to the said Donegan. The complaint further alleges that although more than twelve years have elapsed since the entry of said judgment in said condemnation proceeding, the City of Los Angeles has not constructed any warehouse thereon, and that the premises have remained vacant and unoccupied, and that the title thereto has reverted to the heirs of the said D. F. Donegan. The complaint further alleges that on or about the twenty-seventh day of March, 1925, the plaintiff tendered and offered, in writing, to repay to the City of Los Angeles the sum of $18,892.60, and that in connection with said tender, demanded that the city release and quitclaim said property to the plaintiff.

The answer of the defendant denies the allegations of the complaint, and among other things, set forth the entry of the judgment and decree of condemnation heretofore referred to, and then alleges that the amount of the decree, to wit, the sum of $18,892.60, was paid to the said D. F. Donegan October 7, 1912, and accepted by him pursuant to said judgment and decree, as compensation for said property; that thereafter, a final order and judgment of

condemnation was filed and entered in said cause, and that the defendant took possession of the property mentioned; and has ever since held possession thereof.

It is further alleged that no appeal was taken from said judgment by the said D. F. Donegan, and that the said D. F. Donegan, by the acceptance and retention of the award just mentioned, waived all right to assert that said condemnation proceedings were irregular or invalid, and likewise is estopped to assert the irregularity or invalidity of said proceedings. It is further set forth that the plaintiff, by reason of said Donegan having accepted said award and acquiesced in the judgment without appealing therefrom, is now estopped, and that the heirs of said Donegan are estopped from questioning the title of the city to said premises, and that the city is entitled to hold said premises in fee simple, free from any claim of the plaintiff as the administrator of the Estate of D. F. Donegan, Deceased, etc.

It is further set forth in the answer that this action is barred by the provisions of sections 335 to 340, inclusive, of the Code of Civil Procedure. The findings of the court in the Dorsey case were and are to the effect that on the sixth day of September, 1910, the said Dorsey was, and continuously has been, and now is the owner of the lots described in the plaintiff's complaint, to wit, lots 6, 12 and 13, in block 93 in the town of San Pedro, as per map recorded in book 84, pages 81 to 84, Miscellaneous Records of the county of Los Angeles; that on the said sixth day of September, 1910, the defendant in this action, as plaintiff, began a suit against Arthur S. Koyer et al. in Los Angeles County in which action the plaintiff was made a defendant; that said complaint was filed by the City of Los Angeles for the purpose of condemning certain lands located in blocks 92 and 93 of the town of San Pedro, for the purpose of erecting warehouses thereon; that when said cause came on for trial, the plaintiff Dorsey objected to the introduction of testimony therein, on the ground that the city had no right to maintain an action to condemn property for warehouse purposes; that thereafter, judgment was entered in said action awarding to said Dorsey as a defendant in the condemnation proceedings, damages in the

sum of $53,338.10, which sum was accepted by the said Dorsey. The court further found that on or about the twenty-seventh day of March, 1925, the plaintiff tendered and offered, in writing, to repay to the City of Los Angeles the sum of $53,338.10, and in connection with said tender, demanded that the city release and quitclaim to the plaintiff all interest in said lots. The court further found that the City of Los Angeles has never used said lots, or any part thereof, for the construction of any warehouse thereon, and has not made any plans or preparation for the construction of any such warehouse, and that the lots have remained vacant and unoccupied since the entry of said judgment.

The judgment entered in pursuance of the findings and the conclusions of law based thereon quieted the title of the plaintiff thereto, subject to a lien declared in favor of the city for the amount herein referred to as having been paid to, and accepted by the plaintiff as the value of said premises ascertained in said condemnation proceedings, and further provided for the payment of said sum by the plaintiff to the city within sixty days after the judgment in this action becomes final, and if not so paid, the defendant should be entitled to the issuance of an execution directing the sheriff to sell the lots in question for the repayment to the city of the sum of $53,338.10.

The findings in the Donegan case are similar in form and effect to the findings in the Dorsey case, save and except the property described is set forth as lot number 10 in block 93 in the town of San Diego, as heretofore stated, and that the amount offered in writing to be repaid to the city by the plaintiff in the Donegàn case is the sum of $18,892.60.

While the record and the findings of the court show that no warehouses had been erected upon any of the lots involved in this action, it does appear that the city has removed a building from lot 10, claimed in the Donegan case, and also constructed a viaduct across a part of lots 12 and 13, claimed by the plaintiff Dorsey.

The right of the plaintiffs to maintain these actions is based upon the contention that at the time of the institution thereof the City of Los Angeles had no right to maintain eminent domain proceedings for the purpose of securing

lands upon which to erect warehouses, as prior to the amendment of section 1238 of the Code of Civil Procedure in 1913 (Stats. 1913, p. 544), the word "warehouses" did not appear in subdivision IV of said section, nor did said section, in any other of its provisions, authorize condemnation proceedings for such purposes.

While neither of the plaintiffs in the actions before us upon these appeals—who were defendants in the action entitled *"City of Los Angeles* v. *Koyer et als."*—took appeals from the judgments entered in said action, the defendant Koyer did appeal. (*City of Los Angeles* v. *Koyer,* 48 Cal. App. 720 [192 Pac. 301].) Upon this appeal it was held that a city has no inherent right to maintain eminent domain proceedings, and that such right can only be exercised when expressly authorized by the legislature, and that at the time of the beginning of the action, to wit, in 1910, municipalities were not authorized to maintain eminent domain proceedings to obtain land on which to erect warehouses. It was further held that while section 262 of the charter of the City of Los Angeles authorized the city to incur indebtedness and issue bonds for the purpose of constructing docks, wharves and warehouses, and acquiring the necessary land therefor by purchase or condemnation, such charter was ineffective to authorize the city to condemn land for warehouse purposes, unless such power was granted by the general laws of the state, the power of eminent domain not being classed as a municipal affair.

Upon the coming down of the *remittitur* involving the lots belonging to Koyer, only a portion of whose lots were involved in the appeal, dismissal was entered as to the condemnation proceedings, concerning which Koyer had not withdrawn his appeal. ▮ It would thus appear that at the time of the institution of the action to condemn the lots involved in the appeals now before us, the City of Los Angeles had the right to acquire land for the purpose of erecting warehouses thereon, and had a right, as shown by the cases cited involving the question, to issue bonds for the purpose of obtaining money to build such warehouses, but it possessed no power to acquire sites for such purpose by eminent domain proceedings, and that an action

prosecuted for such purpose stated objects and purposes not within the provisions of section 1238 of the Code of Civil Procedure, and, therefore, that the invalidity of the proceedings appeared upon the face thereof. Under these circumstances it is strongly contended on the part of the respondents that the following excerpt taken from Freeman on Judgments, fifth edition, volume 1, page 643, is determinative of this appeal It is there said: "A judgment, upon its face requiring only an inspection of the record to demonstrate its validity, is a mere nullity, in legal effect, no judgment, conferring no right and affording no justification; nothing can be acquired or lost by it; it neither bestows nor extinguishes any right, and may be successfully assailed whenever it is offered as the foundation for the assertion of any claim or title; it neither binds nor bars anyone; all acts performed under it, and all claims flowing out of it are void. The parties attempting to enforce it may be responsible as trespassers. The purchaser at any sale by virtue of its authority finds himself without title and without redress. No actions upon the part of the plaintiff, no inaction upon the part of the defendant, no resulting equity in the hands of third persons, no power residing in any legislature or other department of the government, can invest it with any of the elements of power or of vitality. . . . Such a judgment has been characterized as 'a dead limb upon the judicial tree which may be chopped off at any time, capable of bearing no fruit to plaintiff, but constituting a constant menace to defendants'."

Section 1917 of the Code of Civil Procedure reads: "The jurisdiction sufficient to sustain a record is jurisdiction over the cause, over the parties, and over the thing, when a specific thing is the subject of the judgment." It is so well settled that when jurisdiction over the subject matter or over the parties is lacking any judgment rendered in such an action is void, as to require no citation of authorities. In fact, this statement of the law as urged upon our attention by the respondent is unquestioned by the appellant.

The appellant, however, insists that the trial court had jurisdiction to pronounce judgment in the case of *The City of Los Angeles* v. *Koyer et al.*, although it was not authorized by law to enter the judgment which it did enter,

to wit, the condemnation of the lands involved for the purpose of building warehouses thereon. It is insisted on the part of the appellant that jurisdiction to hear and determine the cause, vested in the trial court by reason of the provisions of section 5 of article VI of the Constitution, and that authority to enter judgment of condemnation in particular cases or instances, or for particular purposes, is controlled by section 1238 of the Code of Civil Procedure, and of course, controlled the action of the trial court as the section read in 1910 (Stats. 1909, p. 1032) when the action was begun, and that as the court had jurisdiction to try and enter judgment in the cause, if it entered judgment not authorized by the section of the code, and the defendants in that action acquiesced in the entry of said judgment and accepted the fruits thereof, to wit, the damages awarded for the taking of the property, and prosecuted no appeal from the judgment, and retained the fruits of the judgment for the intervening years shown to have elapsed between the entry of the judgment and the date of the beginning of these actions, then and in that case all irregularities and errors of the trial court in the entry of the judgment, conceding that the trial court had no authority to enter judgment of condemnation for the specific purpose for which it did, have been waived by the plaintiffs in these actions, and the right to question the judgment no longer exists.

In 15 C. J., page 844, section 164, the rule as to waiver is thus stated: "An absolute want of jurisdiction of the subject matter or cause of action cannot be waived; nor can the doctrine of equitable estoppel be invoked to confer a jurisdiction on a tribunal which has no jurisdiction of the subject matter. But where the court has general jurisdiction of the subject matter, a lack of jurisdiction of the particular case may be waived by failure to take timely and specific objections, or an indication of, or submission to the jurisdiction may raise an estoppel to deny such jurisdiction. So, also, the parties may, either expressly or by their conduct, waive objections to remedies pursued in courts having jurisdiction of the subject matter." Thus it is argued that the trial court had general jurisdiction of the subject matter, and even though it lacked jurisdiction of the

particular case, the plaintiffs, by accepting the fruits of the judgment, have waived all rights to question the same.

In 7 California Jurisprudence, page 584, the text on the subject of jurisdiction, reads: ''Jurisdiction is the power to hear and determine.; and jurisdiction of a particular case is the power to hear and determine that case.'' That the trial court had jurisdiction to hear and determine the cause before it in the action against Koyer et al., being an eminent domain proceeding, can scarcely be questioned. That it had no authority to enter the judgment which it did, clearly appears from an inspection of section 1238 of the Code of Civil Procedure as it then read.

In Ruling Case Law, volume 7, page 1029, we find the following text peculiarly applicable to this case: ''Jurisdiction of the subject matter does not mean simply jurisdiction of the particular case then occupying the attention of the court, but jurisdiction of the class of cases to which that particular case belongs. As applied to the subject-matter of the suit, jurisdiction is likewise conferred by law, and it is incorrect to suppose that the power to decide in any case rests solely on the averments of a pleading, but on the contrary the jurisdiction of a court in no way depends on the sufficiency or insufficiency of the pleadings, and if the pleadings state a cause of action belonging to a general class, and over which the authority of the court extends, then jurisdiction attaches and the court has jurisdiction to hear and determine the issues involved.''

As we have seen, the Constitution gives the superior court jurisdiction over the class of cases to which the particular case involved belongs, and the jurisdiction of the court to hear and determine is not absent simply because the law does not authorize the entry of the particular judgment which the court in a particular case may enter.

No contention is made that the court, in the case of *The City of Los Angeles* v. *Koyer et al.*, did not have jurisdiction over the persons of Rebecca Lee Dorsey and D. F. Donegan.

If what we have said is correct, then the argument of respondent, based upon the text set forth in 15 California Jurisprudence, page 57, has no application. It is there said: ''Neither the doctrine of laches nor the statute of limitations

has any application to an attack upon a judgment void for lack of jurisdiction, the rule in this respect being different from that governing relief from a judgment which is merely voidable for fraud or similar grounds. The court's power to vacate a judgment or order void on its face is not extinguished by lapse of time, but may be exercised whenever the matter is brought to its attention." Nor do we need to question the rule set forth in the same volume of California Jurisprudence, page 49, reading: "Generally speaking, if a judgment is void it is subject to collateral attack. It has been said that 'A judgment absolutely void may be attacked anywhere, directly or collaterally whenever it presents itself, either by parties or strangers. It is simply a nullity, and can be neither a basis nor evidence of any right whatever.' " etc.

It may be further noted that while it was held in the case of *The City of Los Angeles* v. *Koyer,* 48 Cal. App. 720 [192 Pac. 301], that the court was without authority to enter the judgment which it did enter, the case does not hold and there is nothing in the opinion indicating that it was intended to hold that the trial court did not have jurisdiction over the general class of cases to which the specific case belonged. The ruling of the court is simply to the effect that the law, at the time the action was begun, did not authorize condemnation for the specific purpose involved in that action, and for that reason, the judgment of the trial court was reversed. The appellate court did not direct the dismissal of the action for want of general jurisdiction over eminent domain proceedings.

 Are the respondents in this action estopped by reason of the fact that as defendants in the action of *The City of Los Angeles* v. *Koyer,* Rebecca Lee Dorsey and D. F. Donegan acquiesced in the judgment and accepted the fruits thereof?

In 15 California Jurisprudence, page 55, the right to attack a judgment is thus stated: "Ordinarily, no question is raised as to the right of a party to a judgment to attack it upon any proper grounds. Such a person may, however, be estopped to do so where he has enjoyed the fruits of the judgment." We do not need to consider how far this doctrine has been extended to divorce proceedings,

but will confine ourselves simply to actions involving eminent domain proceedings and money judgments, as the question of public policy enters into judgments in divorce proceedings.

In 2 Ruling Case Law, page 61, the right of a party to attack a judgment after having received the fruits thereof, is thus spoken of by the text-writer: "It is quite generally conceded that one cannot ordinarily accept or secure a benefit under a judgment or decree, and then appeal from it or sue out a writ of error, when the effect of his appeal or writ of error may be to annul the judgment."

In 10 Ruling Case Law, page 209, we find the rule as to accepting awards in eminent domain proceedings worded as follows: "Where, however, a land owner accepts a sum awarded to him as damages in condemnation proceedings, he is estopped from taking and prosecuting an appeal from the award." This rule is a little more fully stated in 20 C. J., page 1054: "An owner who accepts a compensation awarded, cannot object to the amount of the award, or claim that the taking was unauthorized or that the condemnation proceedings were irregular, in the absence of fraud, collusion or prejudice, nor can he claim the land condemned, even by a return of the compensation paid."

The foregoing statements of the rule are supported by a long list of citations found in the volume referred to, and especially the rule that acceptance of the award and acquiescence in the judgment, as appears to characterize the circumstances in the instant cases, estops the parties from further questioning the proceedings, even though the taking is unauthorized by the statutes.

In the notes appended to the case of *McKain* v. *Mullin*, 29 L. R. A. (N. S.) 1, beginning on page 21, may be found a number of cases showing when a land owner is estopped. We quote from a few of them: "A land owner who accepts payment of damages awarded him for the taking of a portion of his land for a public highway cannot be heard to declare afterwards that the proceeding for opening such highway was void. (*Town* v. *Blackberry*, 29 Ill. 137; *Kile* v. *Yellowhead*, 80 Ill. 208; *Hartshorn* v. *Potroff*, 89 Ill. 509.)" Likewise: "A land owner who accepts the damages awarded him for land taken in the laying

out of a public highway virtually dedicates his land as a public highway, and is estopped from contesting the validity of the proceedings to take it, however defective they may be. (*Karber* v. *Nellis*, 22 Wis. 215; *State* v. *Langer*, 29 Wis. 68; *Schatz* v. *Pfeil*, 56 Wis. 429 [14 N. W. 628]; *Moore* v. *Roberts*, 64 Wis. 538 [25 N. W. 564].)" Again: "The acceptance by a land owner of a sum awarded to him as damages for opening a highway across his land estops him from prosecuting an appeal to reverse the judgment establishing the highway. (*Glassburn* v. *Deer*, 143 Ind. 174 [41 N. E. 376].)" To the same effect are the cases of *Mississippi & M. R. Co.* v. *Byington*, 14 Iowa, 572; *Baltimore, O. & C. R. Co.* v. *Johnson*, 84 Ind. 420; *Parks* v. *Dallas Terminal R. & Union Depot Co.*, 34 Tex. Civ. App. 341 [78 S. W. 533]. A parallel case is that of *Sherman* v. *McKeon*, 38 N. Y. 266, where it is held: "A land owner whose land has been condemned by right of eminent domain waives his right to appeal from the judgment in the condemnation proceedings, by accepting and retaining the damages awarded to him for his property; and this, notwithstanding the law under which the condemnation was had may be unconstitutional because it authorizes the taking of private property for other than public purposes."

In *Hensley* v. *Rich*, 191 Ind. 294 [18 A. L. R. 1118, 132 N. E. 632, 636], the rule relative to a waiver of the right to further proceeding after accepting the fruits of a judgment, reads as follows: "By electing to follow the specific funds paid into court by Rich & Rich in satisfaction of the judgment and decree, and obtaining an order of court which necessarily operated to prevent Rich & Rich from receiving their money back, and prevented the money from earning interest for their benefit in the hands of Ryan, appellant has estopped himself to challenge the judgment as against the appellees Rich & Rich. A party cannot seize upon and hold for his own benefit the amount of a judgment paid in by the party against whom the judgment was recovered, and at the same time successfully maintain an appeal on the ground that there was no valid judgment. (*Williams* v. *Richards*, 152 Ind. 528 [53 N. E. 765]; *Western Const. Co.* v. *Carroll County*, 178 Ind. 684, 688 [98 N. E. 347].)" In the instant case, the money paid in by the

city has been retained for a period now exceeding eighteen years, and at the time of the beginning of these actions had been retained for a period of about thirteen years, during all of which time the city has been deprived of the use of said moneys and the land owners have had the use and benefit thereof, and the opportunity to earn interest thereon.

That the doctrine of waiver and estoppel, by reason of accepting the fruits of the award in condemnation proceedings is applicable even though there may be a want of jurisdiction, is further supported by the case of *Denver City Irr. & Water Co.* v. *Middaugh,* 12 Colo. 434 [13 Am. St. Rep. 234, 21 Pac. 565, 566], a case decided by the Supreme Court of Colorado. It is there said: "It is a familiar principle of the law that a party accepting and retaining the fruits of a void judgment is estopped from assailing the judgment itself." (Citing some of the cases heretofore referred to.) "In none of the cases, however, did it become necessary to determine the effect of receiving the benefits of a judgment void for want of jurisdiction in the court over the subject-matter of the suit, although the language used in some of the opinions is broad enough to cover such cases. In the case at bar the court below, in some of the instructions given to the jury, seems to have drawn a distinction between the case of a party accepting the fruits of a judgment rendered by a court without jurisdiction of the subject-matter, and a case in which the party has received the fruits of a judgment voidable for want of jurisdiction over the person, or on account of some informality occurring in the proceedings, antecedent to judgment, but this theory is expressly waived by counsel for appellee in their argument filed in this court, and, after diligent search, I have been unable to find any authority in support of the theory of the trial court. . . . And as appellee, after the notice of the invalidity of such proceeding, continued to retain the money so paid, I am of the opinion that he is estopped from denying the validity of such judgment, and that he should be held bound by that adjudication the same as he would have been had the court had complete jurisdiction, and that for the purposes of this action the same should be treated in all respects as a valid judgment."

In the instant case the record shows that the respondents had knowledge, in 1910 and 1912, at the time of accepting the awards of all the grounds now advanced against the validity of the judgments entered in the case of the *City of Los Angeles* v. *Koyer et al.*, notwithstanding they prosecuted no appeals, acquiesced in the judgments and accepted the awards. The Colorado case from which we have just quoted is reaffirmed in *Handy Ditch Co.* v. *Southside Ditch Co.*, 26 Colo. 333 [58 Pac. 30]. To the same effect is the case of *Fields* v. *Kincaid*, 67 Colo. 20 [184 Pac. 832].

In *Tyler* v. *Shea*, 4 N. D. 377 [50 Am. St. Rep. 660, 61 N. W. 468, 469], a number of cases are cited supporting the next on the subject which we are considering, reading as follows: "The rule is well settled that one cannot accept or secure a benefit under a judgment and then appeal from it, when the effect of his appeal may be to annul the judgment, unless his right to the benefit is absolute and cannot possibly be affected by the reversal of the judgment." In the Koyer case, in which Dorsey and Donegan were defendants, a reversal of the judgment on the grounds presented upon these appeals, would have absolutely barred their right to any portion of the awards. Thus, it is shown that the plaintiff's right to the benefits is not absolute, but does not and did not exist, save and except upon their acquiescence in the validity of the judgment and their tacit agreement that the judgment entered was sufficient to transfer title to the property to the City of Los Angeles, whose money they received and appropriated to their own uses and benefit.

In the case of *Brooks* v. *Yell Co.*, 76 Ark. 67 [88 S. W. 590], it was held: "That a land owner, after condemnation proceedings had been had, who received the amount of the award, was estopped from claiming the land appropriated and could not, without the consent of the county, restore his rights by a return of the money."

That the acceptance of the award is an affirmance of the proceedings and cannot afterward be questioned, is affirmed in the case of *Cape Girardeau & T. B. T. R. Co.* v. *Southern Illinois & Mo. Bridge Co.*, 215 Mo. 286 [114 S. W. 1084], where a number of authorities are cited.

Though the facts involved on these appeals are distinguishable in some particulars from the circumstances involved in the cases of *Young* v. *City of Los Angeles,* and *City of Los Angeles* v. *Morris,* 86 Cal. App. 13 [260 Pac. 798, 802], the principles of law enunciated in the elaborate and well considered opinion prepared by Presiding Justice Works are applicable here, and we think, controlling. The authorities there cited are directly in point. The opinion is too lengthy to be quoted in full but a few excerpts taken therefrom will illustrate its applicability: ''The receipt of the money operates as an estoppel, and the damages paid have the same effect as a conveyance, and vest the title in the corporation. The consent of the plaintiff is apparent from his conduct in the matter. He evidently appeared and interposed objections to the first report made by the commissioners, and probably induced them to make the award of $1500. He had a right to object to the confirmation of the report, upon the ground that the land was taken without his consent, and had he done so, it would have been set aside. This he failed to do, and consented to receive the money. The corporation was not bound to pay the money except upon a waiver of all objections as to the title conferred, and his receipt of the money was a waiver of the objection and a sufficient consideration for his affirmance of the title in the corporation.'' (Citing *Matter of John and Cherry Streets,* 19 Wend. (N. Y.) 659; *Sherman* v. *McKeon,* 38 N. Y. 266.) ''The voluntary acceptance by the defendant of the damages assessed and awarded to him by the judgment, with a knowledge of all the facts, precludes him from afterwards controverting the rights of the plaintiff, as established by the judgment. Nor is it material in such cases that the judgment may have been erroneous or even void.'' (Citing *Kile* v. *Town of Yellowhead,* 80 Ill. 208.) Again, a number of cases are cited to the point that the acceptance of the award estops the parties from claiming that the proceedings are void. Hearing in the Supreme Court was denied in both the Young and the Morris cases. It must be further borne in mind that the respondents in the cases now before us delayed some five years after the decision in the Koyer case before beginning these actions, the Koyer case being the principal one relied

upon by the respondents as establishing their rights to reclaim the lands.

In view of what the record discloses, as set forth in the foregoing, and the authorities cited, the conclusion seems to us unavoidable that Rebecca Lee Dorsey and D. F. Donegan, in 1912, by the acceptance of the award, under the conditions attendant upon this case, waived all rights to reclaim the property involved, and especially is this true where said parties remained silent for some thirteen years without questioning the title of the city, and likewise, have retained possession of many thousands of dollars, and had the use thereof for a period now exceeding eighteen years.

It is further contended on the part of the appellant that even though this court should hold that respondents are not estopped to question the title of the City of Los Angeles to the property involved, that the judgment as rendered is erroneous; that the tenders made by the respondents were insufficient. While the judgments must be reversed for the reasons set forth in this opinion, we think the contention of the appellant, in relation to the form of the judgment, well taken. Under any view of the case we cannot very well see how the plaintiffs would be entitled to reclaim the property without first returning to the city the amount of the awards accepted by them, together with interest thereon at the legal rate from the date of acceptance until the date of payment, less any profits accruing to the city by reason of any possession or occupancy, or rental value of the premises involved. The plaintiffs have appealed to a court of equity, and it is a well settled rule of law that in order to obtain the benefit of any alleged equities, the parties so claiming must do equity.

The judgment and decree in the case of Rebecca Lee Dorsey against the City of Los Angeles is reversed.

The judgment and decree in the case of William P. Donegan as Administrator of the Estate of D. F. Donegan, deceased, against the City of Los Angeles, is reversed.

A petition for a rehearing of this cause was denied by the District Court of Appeal on December 19, 1930, and a petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on January 12, 1931.